**08 C 1248**

**JUDGE KENNELLY**
**MAGISTRATE JUDGE VALDEZ**

# EXHIBIT 1

IN THE CIRCUIT COURT OF THE TWELFTH JUDICIAL CIRCUIT OF ILLINOIS
WILL COUNTY

| | | |
|---|---|---|
| GE COMMERCIAL DISTRIBUTION, FINANCE CORP., | ) | |
| Plaintiff, | ) | **08L 045** |
| | ) | |
| vs. | ) | CASE NO. 08 L _____ |
| | ) | |
| MUDE USA, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## VERIFIED COMPLAINT FOR DAMAGES

Now comes Plaintiff, GE COMMERCIAL DISTRIBUTION FINANCE CORP.
("CDF"), by its attorneys, HUSCH & EPPENBERGER, LLC, and for its Complaint for
Damages against Defendant MUDE USA, LLC ("Mude"), states as follows:[1]

## PARTIES AND JURISDICTION

1.      CDF is, and at all times mentioned herein was, a corporation duly organized and
existing under the laws of the State of Delaware and qualified to do business in the State of
Illinois, with its principal place of business at 5595 Trillium Boulevard, Hoffman Estates, Illinois
60192.

2.      Defendant Mude is, and at all times mentioned herein was, a limited liability
company duly formed and existing under the laws of the State of Florida, and qualified to do
business in Florida with its principal place of business at 5201 Blue Lagoon Drive, Suite 802,
Miami, FL 33126.

---

[1] THIS ACTION IS INSTITUTED SOLELY FOR THE PURPOSE OF OBTAINING PROVISIONAL REMEDIES
AND IS NOT A WAIVER OF THE BINDING ARBITRATION PROVISION SET FORTH IN THE INVENTORY
FINANCING AGREEMENT DESCRIBED HEREIN.

2868289.02

Initial case management set for
5-6-08 at: 9 ___ am / pm
**Will County Court Annex**

3.      Pursuant to 735 ILCS 5/2-101, venue is proper in Will County, Illinois because (i) the Inventory Financing Agreement described below was negotiated and substantially performed by CDF and Mude in the State of Illinois; (ii) Defendant is not a resident of Illinois; and (iii) the property of Mude that CDF seeks the Court's authority to attach is located with Citibank, N.A., which bank has a branch located in Will County, Illinois, at 691 Brook Forest Avenue, Shorewood, Illinois 60404.

4.      Pursuant to 735 ILCS 5/2-209(1) and (7), this Court has jurisdiction over this action because: (i) Mude transacted business with CDF in the State of Illinois; and/or (ii) CDF and Mude entered into the contract that forms the basis for this claim in the State of Illinois. <u>See</u> Exhibit "A" hereto, at ¶27.

**FIRST CAUSE OF ACTION**
**(Breach of Contract – Against Mude)**

5.      On or about August 12, 2006, CDF and Mude entered into that certain Inventory Financing Agreement, and subsequent amendments thereto (collectively, the "Security Agreement"), pursuant to which CDF agreed to finance Mude's purchase of electronics inventory, including, but not limited to routers and electronic networking products. A true and correct copy of the Security Agreement is attached hereto as Exhibit "A" and incorporated herein by reference.

6.      According to the provisions of the Security Agreement, CDF extended credit to Mude pursuant to the general terms contained in the Security Agreement and pursuant to the terms of the Transaction Statements to be sent to Mude with respect to specific transactions as is more fully set forth in Section 2 of the Security Agreement.

7.      To secure the amounts due and to become due under the Security Agreement, *Mude granted CDF a security interest in, among other property, the following:*

all personal property of [Mude], whether such property or Mude's right, title or interest therein or thereto is now owned or existing or hereafter acquired or arising, and wherever located, including without limitation, all Accounts, Inventory, Equipment, Fixtures, other Goods, General Intangibles (including without limitation, Payment Intangibles), Chattel Paper (whether tangible or electronic), Instruments (including without limitation, Promissory Notes), Deposit Accounts, Investment Property and Documents and all Products and Proceeds of the foregoing. Without limiting the foregoing, the Collateral includes Dealer's right to all Vendor Credits (as defined in the Security Agreement) (collectively, the "Collateral").

8.      CDF perfected its security interest in the Collateral by filing a UCC-1 Financing Statement with the Florida Secretary of State on August 3, 2006. A true and correct copy of the UCC-1 Financing Statement is attached hereto as Exhibit "B" and incorporated herein by reference.

9.      Pursuant to Section 26 of the Security Agreement, all disputes thereunder are subject to binding arbitration, except that nothing in the Security Agreement prevents CDF from initiating an action for the purpose of seeking provisional remedies, including attachment, injunction, and/or any prejudgment or provisional remedy relating to any Collateral for any current or future debt owed by Mude to CDF. Exhibit A, Section 26(g).

10.     Pursuant to the terms of the Security Agreement, CDF extended credit to Mude for Mude's purchase of inventory and allowed Mude to take possession of the inventory.

11.     On October 16, 2007, CDF sent Mude a Notice of Default & Demand for Cure (the "Notice of Default"), advising Mude that CDF was aware that one or more of Mude's major customers of routers and electronic networking equipment are the subject of recent police activity in Brazil. Accordingly, CDF further advised Mude that it was in breach of sections 11(k) and 11(n) of the Security Agreement due to a material adverse change in the business and operations of Mude. A true and correct copy of the Notice of Default is attached hereto as

Exhibit "C" and incorporated herein by reference.  Mude did not cure its defaults under the Security Agreement.

12.    On October 18, 2007, CDF sent Mude a Notice of Acceleration & Termination (the "Notice of Termination"), pursuant to which CDF terminated Mude's credit facility and demanded payment from Mude in the amount of $60,661,915.41, plus accruing interest after October 6, 2008, costs and fees.  A true and correct copy of the Notice of Termination is attached hereto as Exhibit "D" and incorporated herein by reference.

13.    As a proximate result of Mude's breach of the Security Agreement, CDF has suffered damages in the sum of no less than $52,786,203, which is comprised of the principal balance as of January 15, 2008, in the amount of $51,688,858, and accrued and unpaid interest as of January 5, 2008, in the amount of $1,097,345.  Late charges and interest continue to accrue. Mude has paid no part of such amounts.

14.    Pursuant to the terms of the Security Agreement, in the event of Mude's default, CDF is entitled to recover all reasonable attorneys' fees and legal expenses and other costs and expenses incurred by CDF in connection with enforcing its liens on the Collateral or collecting any obligations owed under the Security Agreement.  Exhibit A, Section 14.  By reason of Mude's conduct, CDF has incurred such fees and expenses and will continue to do so.

WHEREFORE, CDF demands:

A.    Judgment against Mude following arbitration and the Court to enforce the arbitration award made to CDF against Mude, Judgment in favor of CDF and against Mude for reasonable attorneys' fees incurred herein, and Judgment in favor of CDF and against Mude for costs of suit incurred herein; and

B.    For such other relief as this Court deems just and equitable.

GE COMMERCIAL DISTRIBUTION FINANCE
CORP., Plaintiff

By: _____

HUSCH & EPPENBERGER, LLC, Its Attorneys

JEFFREY ALAN RYVA
HUSCH & EPPENBERGER, LLC
401 Main Street, Suite 1400
Peoria, Illinois  61602-1241
Telephone:  (309) 637-4900
Facsimile:  (309) 637-4928

## VERIFICATION

Under penalties as provided by law pursuant to Section 1-109 of the Illinois Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true. .

Executed on January 14TH, 2008, at _____.

I declare under penalty of perjury under the laws of the State of Illinois that the foregoing is true and correct.

_____
CHRISTOPHER J. WOHLERT

# EXHIBIT LIST

A.    Inventory Financing Agreement, dated August 12, 2006

B.    UCC-1 Financing Statement

C.    Notice of Default

D.    Notice of Termination

# EXHIBIT A

### INVENTORY FINANCING AGREEMENT

This Inventory Financing Agreement (as from time to time amended and together with any Transaction Statements, as hereinafter defined, "Agreement") is between GE Commercial Distribution Finance Corporation ("CDF"), with its chief executive office and principal place of business at 5595 Trillium Boulevard, Hoffman Estates, Illinois 60192 and MUDE USA, LLC, a Florida limited liability company ("Dealer").

1.    **Extensions of Credit.** Subject to the terms of this Agreement, CDF may extend credit to or on behalf of Dealer from time to time to enable Dealer to purchase inventory from CDF-approved vendors ("Vendors") and for other purposes. CDF's decision to advance funds is discretionary on CDF's part. CDF may combine all of CDF's advances to Dealer or on Dealer's behalf, whether under this Agreement or any other agreement, and whether provided by one or more of CDF's branch offices, together with all finance charges, fees and expenses related thereto, to make one debt owed by Dealer. Without limiting the discretionary nature of this credit facility, CDF may, without notice to Dealer, elect not to finance any inventory sold by particular Vendors who are in default to CDF, or with respect to which CDF reasonably feels insecure. This Agreement concerns the extension of credit, and not the provision of goods or services.

2.    **Financing Terms.** Certain financial terms of any advance which CDF makes under this Agreement are not set forth herein because such terms depend, in part, on various factors, including without limitation, the availability of Vendor discounts, payment terms or other incentives, CDF's floorplanning volume with Dealer and Vendor and other economic factors which vary from time to time. Therefore, CDF and Dealer agree to set forth in this Agreement only the general terms of Dealer's financing arrangement with CDF. Upon agreeing to finance an item of inventory for Dealer, CDF will transmit or otherwise send to Dealer a "Transaction Statement" which is a record that may be authenticated and transmitted by CDF to Dealer from time to time which identifies the Collateral financed and/or the advance made and the terms and conditions of repayment of such advance. Dealer agrees that Dealer's failure to notify CDF in writing of any objection to a Transaction Statement within thirty (30) days after a Transaction Statement is transmitted or otherwise sent to Dealer shall constitute Dealer's (a) acceptance of all terms thereof, (b) agreement that CDF is financing such inventory at Dealer's request, and (c) agreement that such Transaction Statement will be incorporated herein by reference. If Dealer objects to the terms of any Transaction Statement, Dealer will pay CDF for such inventory in accordance with the most recent terms for similar inventory to which Dealer has not objected (or, if there are no prior terms, at the lesser of 16% per annum or at the maximum lawful contract rate of interest permitted under applicable law), subject to termination of this Agreement by CDF and its rights under the termination provision contained herein. With respect to any advance CDF makes to a Vendor on behalf of Dealer, CDF may apply against any such amount owed to Vendor any amount CDF is owed from such Vendor with respect to Free Floor Periods (each a "CDF Credit") or any other amounts. Notwithstanding the foregoing, Dealer agrees to pay the full amount reflected on any Transaction Statement.

3.    **Security Interest.**
(a)    Dealer hereby grants to CDF a security interest in all of the Collateral as security for all Obligations.
(b)    "Collateral" means all personal property of Dealer, whether such property or Dealer's right, title or interest therein or thereto is now owned or existing or hereafter acquired or arising, and wherever located, including without limitation, all Accounts, Inventory, Equipment, Fixtures, other Goods, General Intangibles (including without limitation, Payment Intangibles), Chattel Paper (whether tangible or electronic), Instruments (including without limitation, Promissory Notes), Deposit Accounts, Investment Property and Documents and all Products and Proceeds of the foregoing. Without limiting the foregoing, the Collateral includes Dealer's right to all Vendor Credits (as defined below). Similarly, the Collateral includes, without limitation, all books and records, electronic or otherwise, which evidence or otherwise relate to any of the foregoing property, and all computers, disks, tapes, media and other devices in which such records are stored. For purposes of this Section 3 only, capitalized terms used in this Section 3, which are not otherwise defined, shall have the meanings given to them in Article 9 of the Illinois Uniform Commercial Code.
(c)    "Obligations" means all indebtedness and other obligations of any nature whatsoever of Dealer to CDF and/or to any person that at any time directly or indirectly controls, is controlled by, or is under common control with CDF (a "CDF Affiliate"), whether such indebtedness or other obligations arise under this Agreement or any other existing or future agreement between or among Dealer, CDF and/or a CDF Affiliate or otherwise, and whether for principal, interest, fees, expenses, indemnification obligations or otherwise, and whether such indebtedness or other obligations are existing, future, direct, indirect, acquired, contractual, noncontractual, joint and/or several, fixed, contingent or otherwise.
(d)    "Vendor Credits" means all of Dealer's rights to any price protection payments, rebates, discounts, credits, factory holdbacks, incentive payments and other amounts which at any time are due Dealer from a Vendor.

4.    **Representations and Warranties.** Dealer represents and warrants that at the time of execution of this Agreement and at the time of each approval and each advance hereunder: (a) Dealer is in good standing, does not conduct business under any trade styles or trade names except as disclosed by the Dealer to CDF in writing and has all the necessary authority to enter into and perform this Agreement and Dealer will not violate its organizational documents, or any law, regulation or agreement binding upon it, by entering into or performing its obligations under this Agreement; (b) Dealer keeps its records respecting accounts and chattel paper at its chief executive office identified below, and the only locations at which Collateral is located have been or will be disclosed by the Dealer to CDF in writing prior to the execution of this Agreement (together with additional locations of Dealer in the United States with respect to which Dealer gives CDF at least thirty (30) days prior written notice, "Permitted Locations"); (c) this Agreement correctly sets forth Dealer's true legal name, the type of its organization (if not an individual), the state in which Dealer is incorporated or otherwise organized, and Dealer's organizational identification number, if any; (d) all information supplied by Dealer to CDF, including any financial, credit or accounting statements or application for credit, in connection with this Agreement is true, correct and complete; (e) all advances and other transactions hereunder are for business purposes and not for personal, family, household or any other consumer purposes; (f) Dealer has good title to all Collateral; (g) there are no actions or proceedings pending or threatened against Dealer which might result in any material adverse change in Dealer's financial or business condition; and (h) when requested by CDF, Dealer will provide CDF with a copy of Dealer's organizational documents, and will provide any subsequent amendments thereto bearing indicia of filing from the appropriate governmental authority, or such other documents verifying Dealer's true and correct legal name as CDF may request from time to time.

**5.    Covenants.**

(a)    Until sold as permitted by this Agreement, Dealer shall own all Collateral financed by CDF free and clear of all liens, security interests, claims and other encumbrances, whether arising by agreement or operation of law (collectively "Liens"), other than Liens in favor of CDF and subordinate Liens in favor of other persons with respect to which CDF shall have first consented in writing.

(b)    Dealer will: (1) keep all Collateral at Permitted Locations and keep all tangible Collateral in good order, repair and operating condition and insured as required herein; (2) promptly file all tax returns required by law and promptly pay all taxes, fees, and other governmental charges for which it is liable, including without limitation all governmental charges against the Collateral or this Agreement; (3) permit CDF and its designees, without notice, to inspect the Collateral during normal business hours and at any other time CDF deems desirable (and Dealer hereby grants CDF and its designees an irrevocable license to enter Dealer's business locations during normal business hours without notice to Dealer to account for and inspect all Collateral and to examine and copy Dealer's books and records related to the Collateral); (4) keep complete and accurate records of its business, including inventory, accounts and sales, and permit CDF and its designees to inspect and copy such records upon request; (5) furnish CDF with such additional information regarding the Collateral and Dealer's business and financial condition as CDF may from time to time reasonably request (including without limitation financial statements and projections more frequently than set forth below); (6) immediately notify CDF of any material adverse change in Dealer's prospects, business, operations or condition (financial or otherwise) or in any Collateral; (7) execute (or cause any third party in possession of Collateral to execute) all documents CDF requests to perfect and maintain CDF's security interest in the Collateral; (8) deliver to CDF immediately upon each request by CDF (and CDF may retain) each certificate of title or statement of origin issued for Collateral financed by CDF; (9) at all times be duly organized, existing, in good standing, qualified and licensed to do business in each jurisdiction in which the nature of its business or property so requires; (10) notify CDF of the commencement of any material legal proceedings against Dealer or any Guarantor (as defined below); and (11) comply with all laws, rules and regulations applicable to Dealer, including without limitation, the USA PATRIOT ACT and all laws, rules and regulations relating to import or export controls or anti-money laundering.

(c)    Dealer will not without CDF's prior written consent: (1) use (except for demonstration for sale), rent, lease, sell, transfer, consign, license, encumber or otherwise dispose of Collateral except for sales of inventory at retail in the ordinary course of Dealer's business; (2) sell or otherwise transfer inventory to a Dealer Affiliate (as defined below); (3) engage in any other material transaction not in the ordinary course of Dealer's business; (4) change its business in any material manner or its structure or be a party to a merger or consolidation or change its registration to a registered organization other than as specified above; (5) change its name or conduct business under a trade style or trade name other than those disclosed by the Dealer to CDF in writing without giving CDF at least thirty (30) days' prior written notice thereof; (6) change its chief executive office or office where it keeps its records with respect to accounts or chattel paper; (7) change the state in which it is incorporated or otherwise organized (except upon thirty (30) days' prior written notice to CDF); (8) finance on a secured basis with any Vendor or any third party the acquisition of inventory of the same brand as any inventory financed or to be financed by CDF; or (9) store Collateral financed by CDF with any third party.    For purposes of this Agreement, a "Dealer Affiliate" means any person that: (i) directly or indirectly controls, is controlled by or is under common control with Dealer, (ii) directly or indirectly owns 5% or more of Dealer, (iii) is a director, partner, manager, or officer of Dealer or an affiliate of Dealer, or (iv) any natural person related to Dealer or an affiliate of Dealer. 

**6.    Insurance.**

(a)    All risk of loss, damage to or destruction of Collateral shall at all times be on Dealer. Dealer shall keep tangible Collateral insured for full value against all insurable risks under policies delivered to CDF and issued by insurers satisfactory to CDF with loss payable to CDF and at CDF's request under long-form mortgagee endorsements as its interest may appear subject to cancellation or change only (i) upon ten (10) days written notice to CDF for non-payment of premium or (ii) upon thirty (30) days written notice to CDF for all other reasons. CDF is authorized, but not required, to act as attorney-in-fact for Dealer in adjusting and settling any insurance claims under any such policy and in endorsing any checks or drafts drawn by insurers. Dealer shall promptly remit to CDF in the form received, with all necessary endorsements, all proceeds of such insurance which Dealer may receive. CDF, at its election, shall either apply any proceeds of insurance it may receive toward payment of the Obligations or pay such proceeds to Dealer.

(b)    The following notice is given pursuant to Section 180/15 of the Collateral Protection Act set forth in Chapter 815 Section 180/1 of the Illinois Compiled Statutes; nothing contained in such notice shall be deemed to limit or modify the terms of this Agreement: UNLESS DEALER PROVIDES EVIDENCE OF THE INSURANCE COVERAGE REQUIRED BY DEALER'S AGREEMENT WITH CDF, CDF MAY PURCHASE INSURANCE AT DEALER'S EXPENSE TO PROTECT CDF'S INTEREST IN DEALER'S COLLATERAL. THIS INSURANCE MAY, BUT NEED NOT, PROTECT DEALER'S INTEREST. THE COVERAGE THAT CDF PURCHASES MAY NOT PAY ANY CLAIM THAT DEALER MAKES OR ANY CLAIM THAT IS MADE AGAINST DEALER IN CONNECTION WITH THE COLLATERAL. DEALER MAY LATER CANCEL ANY INSURANCE PURCHASED BY CDF, BUT ONLY AFTER PROVIDING CDF EVIDENCE THAT DEALER HAS OBTAINED INSURANCE AS REQUIRED UNDER THIS AGREEMENT. IF CDF PURCHASES INSURANCE FOR THE COLLATERAL, DEALER WILL BE RESPONSIBLE FOR THE COSTS OF THAT INSURANCE, INCLUDING THE INSURANCE PREMIUM, INTEREST AND ANY OTHER CHARGES CDF MAY IMPOSE IN CONNECTION WITH THE PLACEMENT OF THE INSURANCE, UNTIL THE EFFECTIVE DATE OF THE CANCELLATION OR EXPIRATION OF THE INSURANCE. THE COSTS OF THE INSURANCE MAY BE ADDED TO DEALER'S TOTAL OUTSTANDING BALANCE OR OBLIGATION. THE COSTS OF THE INSURANCE MAY BE MORE THAN THE COST OF INSURANCE DEALER MAY BE ABLE TO OBTAIN ON ITS OWN.

**7.    Financial Statements.** Unless waived by CDF, Dealer will deliver to CDF, in a form satisfactory to CDF: (a) Dealer's year-end balance sheet and annual profit and loss statement for each of its fiscal years, within twenty (20) days after the same are prepared but in no event later than one hundred and twenty (120) days after the end of each fiscal year; (b) within forty-five (45) days after the end of each of Dealer's fiscal quarters, a reasonably detailed balance sheet and income statement as of the last day of such quarter covering Dealer's operations for such quarter; and (c) within ten (10) days after CDF's request, any other information relating to the Collateral or the financial condition of Dealer or any Guarantor. Dealer represents that all financial statements and information which have been or may hereafter be delivered by Dealer or any Guarantor are and will be correct and prepared in accordance with generally accepted accounting principles consistently applied, and there has been no material adverse change in the financial or business condition of Dealer or any Guarantor since the submission to CDF of such financial statements, and Dealer acknowledges CDF's reliance thereon.

**8.    Payment Terms.** Dealer will immediately pay CDF the principal amount of the Obligations owed CDF on each item of Collateral financed by CDF on the earliest occurrence of any of the following events: (a) when such Collateral is lost, stolen or damaged; (b) for Collateral financed under any pay-as-sold ("PAS") terms, when such Collateral is sold, transferred, rented, leased, otherwise disposed of, or its payment term has matured; (c) for Collateral financed under any scheduled payment program ("SPP") terms, in strict accordance with

CDF 61946 (04/06)                                                          2

the installment payment schedule; (d) in strict accordance with any curtailment schedule for such Collateral; and (e) when otherwise required under the terms of this Agreement. The PAS, SPP and curtailment terms are or may be set forth in a Transaction Statement. If Dealer is required to make immediate payment to CDF of any past due obligation discovered during any Collateral review, or at any other time, CDF's acceptance of such payment shall not be construed to have waived or amended the terms of its financing program. Dealer will send all payments to CDF as directed. CDF may apply: (1) payments to reduce finance charges first and then principal, regardless of Dealer's instructions; and (2) principal payments to the oldest (earliest) invoice for Collateral financed by CDF, but, in any event, all principal payments, may, in CDF's sole discretion, first be applied to such Collateral which is sold, lost, stolen, damaged, rented, leased, or otherwise disposed of or unaccounted for. Any Vendor Credit granted to Dealer for any Collateral will not reduce the Obligations Dealer owes CDF until CDF has received payment therefor in cash. Dealer will: (A) pay CDF even if any Collateral is defective or fails to conform to any warranties extended by any third party; and (B) indemnify and hold CDF harmless against all claims and defenses asserted by any buyer of any Collateral. Dealer waives all rights of setoff Dealer may have against CDF. Any payment hereunder which would otherwise be due on a day which is not a Business Day, shall be due on the next succeeding Business Day, with such extension of time included in any calculation of applicable finance charges. Any advances which are not used to acquire inventory, as contemplated hereby, shall be paid on demand unless otherwise provided in this Agreement or in any Transaction Statement. In order to adequately secure Dealer's Obligations to CDF, Dealer shall, at CDF's request, immediately pay CDF the amount necessary to reduce the sum of CDF's outstanding advances with respect to inventory received by Dealer to an amount which does not exceed the aggregate invoice price to Dealer of the inventory in Dealer's possession which (i) is financed by CDF, and (ii) in which CDF has a perfected first priority lien. For purposes of this Agreement, "Business Day" means any day the Federal Reserve Bank of Chicago is open for the transaction of business.

9.  **Calculation of Charges.**

(a)  Dealer shall pay fees, charges and interest (collectively, "Charges") with respect to each advance in accordance with the Agreement. Dealer shall pay CDF its customary Charge for any check or other item which is returned unpaid to CDF. Unless otherwise provided in the Agreement, the following additional provisions shall be applicable to Charges: (i) any reference to "Prime Rate" shall mean for any calendar month the highest "prime rate" published in the "Money Rates" column of the Wall Street Journal on the first Business Day of such month; (ii) all Charges shall be paid by Dealer monthly pursuant to the terms of the billing statement in which such Charges appear; (iii) interest on each advance and principal amount of the Obligations related thereto shall be computed each calendar month on the sum of the daily balances thereof during such month divided by thirty (30) and (A) in the case where a monthly rate of interest is provided for, multiplied by the monthly rate provided for in the Agreement; or (B) in the case where an annual rate of interest is provided for, multiplied by one-twelfth of the annual rate provided for in the Agreement; or (C) in the case where a daily rate of interest is provided for, multiplied by such daily rate and multiplied by thirty (30); (iv) interest on an advance shall begin to accrue on the Start Date which shall be defined as the earlier of: (A) the invoice date referred to in the Vendor's invoice; or (B) the ship date referred to in the Vendor's invoice; or (C) the date CDF makes such advance; provided, however, if a Vendor fails to fully pay, by honoring or paying any CDF Credit or otherwise, the interest or other cost of financing such inventory during the period between the Start Date and the end of the Free Floor Period (as defined below), then Dealer shall pay such interest to CDF on demand as if there were no Free Floor Period with respect to such inventory; (v) for the purpose of computing Charges, any payment will be credited pursuant to CDF's payment recognition policy, as in effect from time to time; and (vi) advances or any part thereof not paid when due (and Charges not paid when due, at the option of CDF, shall become part of the principal amount of the Obligations and) shall bear interest at the Default Rate (as defined below). For purposes of this Agreement, the following definitions shall apply: "Default Rate" shall mean the default rate specified in Dealer's financing program with CDF, if any, or if there is none so specified, at the lesser of 3% per annum above the rate in effect immediately prior to the Default, or the highest lawful contract rate of interest permitted under applicable law; "Free Floor Period" shall mean a period equal to the number of days during which a Vendor agrees to assume the cost of financing Collateral purchased by Dealer by granting CDF a CDF Credit.

(b)  CDF intends to strictly conform to the usury laws governing this Agreement. Regardless of any provision contained herein, in any Transaction Statement, or in any other document, CDF shall never be deemed to have contracted for, charged or be entitled to receive, collect or apply as interest, any amount in excess of the maximum amount allowed by applicable law. If CDF ever receives any amount which, if considered to be interest, would exceed the maximum amount permitted by law, CDF will apply such excess amount to the reduction of the unpaid principal balance which Dealer owes, and then will pay any remaining excess to Dealer. In determining whether the interest paid or payable exceeds the highest lawful rate, Dealer and CDF shall, to the maximum extent permitted under applicable law, (1) characterize any non-principal payment (other than payments which are expressly designated as interest payments hereunder) as an expense or fee rather than as interest, (2) exclude voluntary pre-payments and the effect thereof, and (3) spread the total amount of interest throughout the entire term of this Agreement so that the interest rate is uniform throughout such term. CDF will recognize and credit payments made by check, ACH, federal wire, or other means, according to its payment recognition policies from time to time in effect, or as otherwise agreed. Information regarding CDF payment recognition policies is available from Dealer's CDF representative, the CDF website, or will be communicated pursuant to Section 10(b) below.

(c)  Dealer may receive a record which is or contains a Self-Certification Floorcheck ("SCF") at the beginning of certain months reflecting unpaid advances through the last day of the preceding month. If Dealer receives an SCF, Dealer must complete it and return it to CDF by the 15th day of the same month in which it was received by Dealer. If Dealer agrees with all payments due CDF under this Agreement. If CDF does not receive the completed SCF and all payments due by the 25th day of the month in which the SCF was received by Dealer, Dealer will pay CDF a self-certification fee as may be announced from time to time for such month in addition to all other amounts owed. The cost of any collateral inspection occasioned by a default or otherwise out of the ordinary course of business may be added to the Obligations at CDF's discretion.

10.  **Billing Statement/Fees; Right to Modify Charges and Other Terms.**

(a)  CDF will transmit or otherwise send Dealer a monthly billing statement identifying all charges due on Dealer's account with CDF. The charges specified on each billing statement will be (1) payable in full immediately on receipt, and (2) an account stated, unless CDF receives Dealer's written objection thereto within fifteen (15) days after it is transmitted or otherwise sent to Dealer. If CDF does not receive, by the 25th day of a given month, payment of all charges accrued to Dealer's account with CDF during the immediately preceding month, Dealer will (to the extent allowed by law) pay CDF a late fee equal to the greater of $5 or 5% of the amount of such charges (payment of such fee does not waive the default caused by the late payment). CDF may adjust the billing statement at any time to conform to applicable law and this Agreement.

(b)  CDF may charge one or more fees in connection with the servicing and administration of Dealer's account. From time to time, CDF may provide written notice to Dealer of new or changed fees, interest and/or other finance charges (including without limitation, increases or decreases in the periodic rate or amount of finance charges, the method of computing finance charges and when and how finance charges, and principal payments, are payable), policies, practices and other charges and/or credit terms (collectively, "Fees and 

Terms") payable by, or applicable to, Dealer or relating to Dealer's account generally, or in connection with specific services, or events, to be effective as of the notice date, or such other future effective date as CDF shall advise, with respect to existing Obligations owing by Dealer to CDF and/or to Obligations incurred or arising after such notice or future effective date, as the case may be, all as CDF may elect by so indicating in such notice. Such notice may be delivered by mail, courier or electronically in a separate writing or website posting, or set forth in the Transaction Statement and/or the billing statement. Dealer shall be deemed to have accepted such Fees and Terms by either (1) making any request for financing after the effective date of such notice, or (2) failing to notify CDF in writing of any objection to a Transaction Statement, billing statement or written notice advising of such Fees and Terms within fifteen (15) days after such notice has been sent to Dealer. If Dealer objects to the Fees and Terms, such Fees and Terms shall not be imposed, but CDF may charge or implement the last Fees and Terms to which Dealer has not objected, and may elect to terminate Dealer's financing program.

11.    **Default.** The occurrence of one or more of the following events shall constitute a default by Dealer (a "**Default**"): (a) Dealer shall fail to pay any Obligations when due or any remittance for any Obligations is dishonored when first presented for payment; (b) any representation made to CDF by Dealer or by any guarantor, surety, issuer of a letter of credit or any person other than Dealer primarily or secondarily liable with respect to any Obligations (a "**Guarantor**") shall not be true when made or if Dealer or any Guarantor shall breach any covenant, warranty or agreement to or with CDF; (c) Dealer (including, if Dealer is a partnership or limited liability company, any partner or member of Dealer) or any Guarantor shall die, become insolvent or generally fail to pay its debts as they become due or, if a business, shall cease to do business as a going concern; (d) any letter of credit or other form of collateral provided by Dealer or a Guarantor to CDF with respect to any Obligations or Collateral shall terminate or not be renewed at least sixty (60) days prior to its stated expiration or maturity; (e) Dealer abandons any Collateral; (f) any Guarantor shall revoke, terminate or limit, or take any action purporting to revoke, terminate or limit, any guaranty or other assurance of payment relating to any Obligations; (g) Dealer or any Guarantor shall make an assignment for the benefit of creditors, or commence a proceeding with respect to itself under any bankruptcy, reorganization, arrangement, insolvency, receivership, dissolution or liquidation statute or similar law of any jurisdiction, or any such proceeding shall be commenced against it or any of its property (an "**Automatic Default**"); (h) an attachment, sale or seizure shall be issued or shall be executed against any assets of Dealer or of any Guarantor; (i) Dealer shall lose, or shall be in default of, any franchise, license or right to deal in any Collateral which CDF finances; (j) Dealer, Guarantor or any third party shall file any correction or termination statement with respect to any Uniform Commercial Code (the "**UCC**") filing made by CDF in connection herewith; (k) a material adverse change shall occur in the business, operations or condition (financial or otherwise) of Dealer (including, if Dealer is a partnership or limited liability company, any partner or member of Dealer) or any Guarantor or with respect to the Collateral; (l) Dealer or any Guarantor fails to pay any debt or perform any other obligation owed to any third party; (m) Dealer or any Guarantor defaults under the terms of any agreement with any CDF Affiliate; or (n) CDF in good faith believes the prospect of payment of any Obligations is impaired or CDF deems itself insecure.

12.    **Rights and Remedies Upon Default.** Upon the occurrence of a Default, CDF shall have all rights and remedies of a secured party under the UCC as in effect in any applicable jurisdiction and other applicable law and all the rights and remedies set forth in this Agreement. CDF may terminate any obligations it has under this Agreement and any outstanding credit approvals immediately and/or declare any and all Obligations immediately due and payable without notice or demand. Dealer waives notice of intent to accelerate, and of acceleration of any Obligations. CDF may enter any premises of Dealer, with or without process of law, without force, to search for, take possession of, and remove the Collateral, or any part thereof. If CDF requests, Dealer shall cease disposition of and shall assemble the Collateral and make it available to CDF, at Dealer's expense, at a convenient place or places designated by CDF. CDF may take possession of the Collateral or any part thereof on Dealer's premises and cause it to remain there at Dealer's expense, pending sale or other disposition. Dealer agrees that the sale of inventory by CDF to a person who is liable to CDF under a guaranty, endorsement, repurchase agreement or the like shall not be deemed to be a transfer subject to UCC §9-618 or any similar provision of any other applicable law, and Dealer waives any provision of such laws to that effect. Dealer agrees that the repurchase of inventory by a Vendor pursuant to a repurchase agreement with CDF shall be a commercially reasonable method of disposition. Dealer shall be liable to CDF for any deficiency resulting from CDF's disposition, including without limitation a repurchase by a Vendor, regardless of any subsequent disposition thereof. Dealer is not a beneficiary of, and has no right to require CDF to enforce, any repurchase agreement. Any notice of a disposition shall be deemed reasonably and properly given if given to Dealer at least ten (10) days before such disposition. If Dealer fails to perform any of its obligations under this Agreement, CDF may perform the same in any form or manner CDF in its discretion deems necessary or desirable, and all monies paid by CDF in connection therewith shall be additional Obligations and shall be immediately due and payable without notice together with interest payable on demand at the Default Rate. All of CDF's rights and remedies shall be cumulative. At CDF's request, or without request in the event of an Automatic Default, Dealer shall pay all Vendor Credits to CDF as soon as the same are received for application to the Obligations. Dealer authorizes CDF to collect such amounts directly from Vendors and, upon request of CDF, shall instruct Vendors to pay CDF directly. Dealer irrevocably waives any requirement that CDF retain possession and not dispose of any Collateral until after an arbitration hearing, arbitration award, confirmation, trial or final judgment or appeal thereof. CDF's election to extend or not extend credit to Dealer is solely at CDF's discretion and does not depend on the absence or existence of a Default. If a Default is in effect, and without regard to whether CDF has accelerated any Obligations, CDF may, without notice, apply the Default Rate.

13.    **Power of Attorney.** Dealer authorizes CDF to: (a) file financing statements describing CDF as "Secured Party," Dealer as "Debtor" and indicating the Collateral; (b) authenticate, execute or endorse on behalf of Dealer any instruments, chattel paper, certificates of title, manufacturer statements of origin, builder's certificate, financing statements and amendments thereto, or other notices or records comprising or related to Collateral or evidencing financing under the Agreement or evidencing or maintaining the perfection of the security interest granted hereby, as attorney-in-fact for Dealer; and (c) supply any omitted information and correct errors in any documents between CDF and Dealer.  This power of attorney and the other powers of attorney granted herein are irrevocable and coupled with an interest.

14.    **Collection and Other Costs.** Dealer shall pay to CDF on demand all reasonable attorneys' fees and legal expenses and other costs and expenses incurred by CDF in connection with establishing, perfecting, maintaining perfection of, protecting and enforcing its Lien on the Collateral and collecting any Obligations, or in connection with any modification of this Agreement, any Default or in connection with any action or proceeding under any bankruptcy or insolvency laws or incurred pursuant to an arbitration proceeding involving the Dealer, any Guarantor or any Collateral. All fees, expenses, costs and other amounts described in this Section shall constitute Obligations, *shall be secured by the Collateral and interest shall accrue thereon at the Default Rate.*

15. **Information.** Dealer irrevocably authorizes CDF to investigate and make inquiries of former, current, or future creditors or other persons and entities regarding or relating to Dealer (including, to the extent permitted by law, any equity holders of Dealer). CDF may provide to any CDF Affiliate or any third parties any financial, credit or other information regarding Dealer that CDF may at any time possess, whether such information was supplied by Dealer to CDF or otherwise obtained by CDF. Further, Dealer irrevocably authorizes and instructs any third parties (including without limitation, any Vendors or customers of Dealer) to provide to CDF any credit, financial or other information regarding Dealer that such third parties may at any time possess, whether such information was supplied by Dealer to such third parties or otherwise obtained by such third parties.

16. **Dealer's Claims Against Vendors.** Dealer will not assert against CDF any claim or defense Dealer may have against any Vendor whether for breach of contract, warranty, misrepresentation, failure to ship, lack of authority, or otherwise, including without limitation claims or defenses based upon charge backs, credit memos, rebates, price protection payments or returns. Any such claims or defenses or other claims or defenses Dealer may have against a Vendor shall not affect Dealer's liabilities or obligations to CDF.

17. **Termination.** Unless sooner terminated as provided in this Agreement or by at least thirty (30) days prior written notice from either party to the other, the term of this Agreement shall be for one (1) year from the date hereof and from year to year thereafter; provided, however, that CDF may terminate the Agreement immediately by notice to Dealer if Dealer objects to any terms of any Transaction Statement, billing statement or written notice advising of Fees and Terms. Upon termination of the Agreement, all Obligations shall become immediately due and payable without notice or demand. Upon any termination, Dealer shall remain fully liable to CDF for all Obligations, including without limitation all fees, expenses and charges, arising prior to or after termination, and all of CDF's rights and remedies and its security interest shall continue until all Obligations to CDF are paid and all obligations of Dealer are performed in full. If CDF makes advances in reliance on a repurchase agreement from a Vendor, it may cease making such advances if it has any concern as to whether such repurchase agreement will cover future advances or be performed by such Vendor. No provision of the Agreement shall be construed to obligate CDF to make any advances. All waivers and indemnifications in CDF's favor, and the agreement to arbitrate, set forth in this Agreement will survive any termination of this Agreement.

18. **Binding Effect.** Dealer cannot assign its interest in this Agreement without CDF's prior written consent. CDF may assign or participate CDF's interest, in whole or in part, without Dealer's consent. This Agreement will protect and bind CDF's and Dealer's respective heirs, representatives, successors and assigns, as the case may be.

19. **Notices.** Except as required by law or as otherwise provided herein, all notices or other communications to be given under the Agreement or under the UCC shall be in writing served either personally, by deposit with a reputable overnight courier with charges prepaid, or by deposit in the United States mail, first-class postage prepaid or provided for, addressed to Dealer at its chief executive office shown below or to any office to which CDF sends billing statements, or to CDF at its address shown in the preamble hereto, to the attention of its Credit Department, or at such other address designated by such party by notice to the other. Any such communication shall be deemed to have been given upon delivery in the case of personal delivery, one Business Day after deposit with an overnight courier or two (2) calendar days after deposit in the United States mail except that any notice of change of address shall not be effective until actually received.

20. **Severability.** If any provision of this Agreement or its application is invalid or unenforceable, the remainder of this Agreement will not be impaired or affected and will remain binding and enforceable.

21. **Supplement.** If Dealer and CDF have previously executed other agreements pertaining to all or any part of the Collateral, this Agreement will supplement, but not amend, such agreement, and this Agreement will neither be deemed a novation nor a termination of such agreement, nor will execution of this Agreement be deemed a satisfaction of any obligation secured by such agreement.

22. **Receipt of Agreement.** Dealer acknowledges that it has received a true and complete copy of this Agreement. Dealer has read and understands this Agreement. Notwithstanding anything herein to the contrary, CDF may rely on any facsimile copy, electronic data transmission, or electronic data storage of: this Agreement, any Transaction Statement, billing statement, financing statement, authorization to pre-file financing statements, invoice from a Vendor, financial statements or other reports, which will be deemed an original, and the best evidence thereof for all purposes.

23. **Acceptance by CDF.** CDF may accept this Agreement by issuance of an approval to a Vendor for the purchase of inventory by Dealer or by making an advance hereunder.

24. **Miscellaneous.** Time is of the essence regarding Dealer's performance of its obligations to CDF. Dealer's liability to CDF is direct and unconditional and will not be affected by the release or nonperfection of any security interest granted hereunder. CDF may refrain from or postpone enforcement of this Agreement or any other agreements between CDF and Dealer without prejudice, and the failure to strictly enforce these agreements will not create a course of dealing which waives, amends or modifies such agreements. Any waiver by CDF of a Default shall only be effective if in writing signed by CDF and transmitted to Dealer. The express terms of this Agreement will not be modified by any course of dealing, usage of trade, or custom of trade which may deviate from the terms hereof. If Dealer fails to pay any taxes, fees or other obligations which may impair CDF's interest in the Collateral, or fails to keep any Collateral insured, CDF may, but shall not be required to, pay such amounts. Such paid amounts will be: (a) additional Obligations which Dealer owes to CDF, which are subject to finance charges as provided herein and shall be secured by the Collateral; and (b) due and payable immediately in full. Section titles used herein are for convenience only, and do not define or limit the contents of any Section. All words used herein shall be understood and construed to be of such number and gender as the circumstances may require. This Agreement may be validly executed in one or more multiple counterpart signature pages. This Agreement shall be construed without presumption for or against any party who drafted all or any portion of this Agreement. No modification of this Agreement shall bind CDF unless in a writing signed by CDF and transmitted to Dealer. Among other symbols, CDF hereby adopts "GE Commercial Distribution Finance Corporation," "GE Commercial Distribution Finance," "GECDF" or "CDF" as evidence of its intent to authenticate a record.

25. **Limitation of Remedies and Damages.** In the event there is any dispute under this Agreement, the aggrieved party shall not be entitled to exemplary or punitive damages so that the aggrieved party's remedy in connection with any action arising under or in any way



related to this Agreement shall be limited to a breach of contract action and any damages in connection therewith are limited to actual and direct damages, except that CDF may seek equitable relief in connection with any judicial repossession of, or temporary restraining order with respect to, the Collateral.

**26.    BINDING ARBITRATION.**

(a)    <u>Arbitrable Claims.</u> Except as otherwise specified below, all actions, disputes, claims and controversies under common law, statutory law or in equity of any type or nature whatsoever, whether arising before or after the date of this Agreement, and whether directly or indirectly relating to: (a) this Agreement and/or any amendments and addenda hereto, or the breach, invalidity or termination hereof; (b) any previous or subsequent agreement between CDF and Dealer; (c) any act committed by CDF or by any parent company, subsidiary or affiliated company of CDF (the "<u>CDF Companies</u>"), or by any employee, agent, officer or director of a CDF Company whether or not arising within the scope and course of employment or other contractual representation of the CDF Companies provided that such act arises under a relationship, transaction or dealing between CDF and Dealer; and/or (d) any other relationship, transaction or dealing between CDF and Dealer (collectively the "<u>Disputes</u>"), will be subject to and resolved by binding arbitration. Notwithstanding the foregoing, the parties agree that either party may pursue claims against the other that do not exceed Fifteen Thousand Dollars ($15,000) in the aggregate in a court of competent jurisdiction. Service of arbitration claims shall be acceptable if made by U.S. mail or overnight delivery to the address for the party described herein.

(b)    <u>Administrative Body.</u> All arbitration hereunder will be conducted in accordance with the Commercial Arbitration Rules of either: (a) The American Arbitration Association ("<u>AAA</u>"); or (b) United States Arbitration & Mediation ("<u>USA&M</u>"). The party first filing an arbitration claim shall designate which arbitration forum and rules are to be applied for all disputes between the parties. The arbitration rules are currently found at www.adr.org for AAA, and at www.usam-midwest.com for USA&M. AAA claims may be filed in any AAA office. Claims filed with USA&M shall be filed in its Midwest office located at 720 Olive Street, Suite 2020, St. Louis, Missouri 63101. All arbitrator(s) selected will be attorneys with at least five (5) years secured transactions experience. A panel of three arbitrators shall hear all claims exceeding One Million Dollars ($1,000,000), exclusive of interest, costs and attorneys' fees. The arbitrator(s) will decide if any inconsistency exists between the rules of the applicable arbitral forum and the arbitration provisions contained herein. If such inconsistency exists, the arbitration provisions contained herein will control and supersede such rules. The arbitrator shall follow the terms of this Agreement and the applicable law, including without limitation, the attorney-client privilege and the attorney work product doctrine.

(c)    <u>Hearings.</u> Each party hereby consents to a documentary hearing for all arbitration claims by submitting the dispute to the arbitrator(s) by written briefs and affidavits, along with relevant documents. However, arbitration claims will be submitted by way of an oral hearing if any party requests an oral hearing within forty (40) days after service of the claim and that party remits the appropriate deposit for fees and arbitrator compensation within ten (10) days of making the request.    Each party agrees that failure to timely pay all fees and arbitrator compensation billed to the party requesting the oral hearing will be deemed such party's consent to submitting the Dispute to the arbitrator on documents and such party's waiver of its request for an oral hearing. The site of all oral arbitration hearings will be in the Division of the Federal Judicial District in which the designated arbitration association maintains a regional office that is closest to Dealer.

(d)    <u>Discovery.</u> Discovery permitted in any arbitration proceeding commenced hereunder is limited as follows. No later than forty (40) days after the filing and service of a claim for arbitration, the parties in contested cases will exchange detailed statements setting forth the facts supporting the claim(s) and all defenses to be raised during the arbitration, and a list of all exhibits and witnesses. No later than twenty-one (21) days prior to the oral arbitration hearing, the parties will exchange a final list of all exhibits and all witnesses, including any designation of any expert witness(es) together with a summary of their testimony; a copy of all documents and a detailed description of any property to be introduced at the hearing. Under no circumstances will the use of interrogatories, requests for admission, requests for the production of documents or the taking of depositions be permitted. However, in the event of the designation of any expert witness(es), the following will occur: (i) all information and documents relied upon by the expert witness(es) will be delivered to the opposing party; (ii) the opposing party will be permitted to depose the expert witness(es); (iii) the opposing party will be permitted to designate rebuttal expert witness(es); and (iv) the arbitration hearing will be continued to the earliest possible date that enables the foregoing limited discovery to be accomplished.

(e)    <u>Exemplary or Punitive Damages.</u> The arbitrator(s) will not have the authority to award exemplary or punitive damages.

(f)    <u>Confidentiality of Awards.</u> All arbitration proceedings, including testimony or evidence at hearings, will be kept confidential, although any award or order rendered by the arbitrator(s) pursuant to the terms of this Agreement may be confirmed as a judgment or order in any state or federal court of competent jurisdiction within the federal judicial district which includes the residence of the party against whom such award or order was entered. This Agreement concerns transactions involving commerce among the several states. The Federal Arbitration Act, Title 9 U.S.C. Sections 1 et seq., as amended ("<u>FAA</u>") will govern all arbitration(s) and confirmation proceedings hereunder.

(g)    <u>Prejudgment and Provisional Remedies.</u> Nothing herein will be construed to prevent CDF's or Dealer's use of bankruptcy, receivership, injunction, repossession, replevin, claim and delivery, sequestration, seizure, attachment, foreclosure, and/or any other prejudgment or provisional action or remedy relating to any Collateral for any current or future debt owed by either party to the other. Any such action or remedy will not waive CDF's or Dealer's right to compel arbitration of any Dispute.

(h)    <u>Attorneys' Fees.</u> If either Dealer or CDF brings any other action for judicial relief with respect to any Dispute (other than those set forth in Sections 26(a) or 26(g)), the party bringing such action will be liable for and immediately pay all of the other party's costs and expenses (including attorneys' fees) incurred to stay or dismiss such action and remove or refer such Dispute to arbitration. If either Dealer or CDF brings or appeals an action to vacate or modify an arbitration award and such party does not prevail, such party will pay all costs and expenses, including attorneys' fees, incurred by the other party in defending such action. Additionally, if Dealer sues CDF or institutes any arbitration claim or counterclaim against CDF in which CDF is the prevailing party, Dealer will pay all costs and expenses (including attorneys' fees) incurred by CDF in the course of defending such action or proceeding.

(i)    <u>Limitations.</u> Any arbitration proceeding must be instituted: (a) with respect to any Dispute for the collection of any debt owed by either party to the other, within two (2) years after the date the last payment by or on behalf of the payor was received and applied in respect of such debt by the payee; and (b) with respect to any other Dispute, within two (2) years after the date the incident giving rise thereto occurred, whether or not any damage was sustained or capable of ascertainment or either party knew of such incident. Failure to institute an arbitration proceeding within such period will constitute an absolute bar and waiver to the institution of any proceeding, whether arbitration or a court proceeding, with respect to such Dispute. Notwithstanding the foregoing, this limitations provision will be suspended temporarily as of the date any of the following events occur and will not resume until the date following the date either party is no longer subject to (i) bankruptcy, (ii) any proceeding regarding an assignment for the benefit of creditors, or (iv) any legal proceeding, civil or criminal, which prohibits either party from foreclosing any interest it might have in the collateral of the other party.

(j)    <u>Survival After Termination.</u> The agreement to arbitrate will survive the termination of this Agreement. 

27.    **Governing Law.** This Agreement and all agreements between Dealer and CDF have been substantially negotiated and will be substantially performed in the state of Illinois. Accordingly, all Disputes will be governed by, and construed in accordance with, the laws of such state, except to the extent inconsistent with the provisions of the FAA, which will control and govern all arbitration proceedings hereunder.

28.    **INVALIDITY/UNENFORCEABILITY OF BINDING ARBITRATION.** IF THIS AGREEMENT IS FOUND TO BE NOT SUBJECT TO ARBITRATION, ANY LEGAL PROCEEDING WITH RESPECT TO ANY DISPUTE WILL BE TRIED IN A COURT OF COMPETENT JURISDICTION BY A JUDGE WITHOUT A JURY.  DEALER AND CDF WAIVE ANY RIGHT TO A JURY TRIAL IN ANY SUCH PROCEEDING.  SIMILARLY, IF THIS AGREEMENT OR A PARTICULAR DISPUTE HEREUNDER IS NOT SUBJECT TO ARBITRATION, DEALER HEREBY CONSENTS TO THE JURISDICTION OF ANY LOCAL, STATE OR FEDERAL COURT LOCATED WITHIN ILLINOIS AND WAIVES ANY OBJECTION WHICH DEALER MAY HAVE BASED ON IMPROPER VENUE OR FORUM NON CONVENIENS TO THE CONDUCT OF ANY ACTION OR PROCEEDING IN ANY SUCH COURT.

THIS CONTRACT CONTAINS BINDING ARBITRATION, JURY WAIVER AND PUNITIVE DAMAGE WAIVER PROVISIONS.

Dated:  August 21, 2006.


MUDE USA, LLC

By:
Print Name:        Luiz Scarpelli Filho
Title:             Authorized Representative
Tax ID or SSN:     204439910
Org. ID (if any):  L06000019037

Dealer's Chief Executive Office and Principal Place of Business:
5201 Blue Lagoon Drive
Suite 802
Miami, FL  33126




GE COMMERCIAL DISTRIBUTION FINANCE CORPORATION

By:
Print Name:        Christopher J Wohlert
Title:             Vice President of Operations

## AMENDMENT TO INVENTORY FINANCING AGREEMENT

This Amendment is made to that certain Inventory Financing Agreement entered into by and between **MUDE USA, LLC** ("Dealer") and **GE Commercial Distribution Finance Corporation** ("CDF") on August 21, 2006, as amended ("Agreement").

FOR VALUE RECEIVED, Dealer and CDF agree to amend the Agreement to provide as follows (capitalized terms shall have the same meaning as defined in the Agreement unless otherwise indicated):

1.    Dealer will forward to CDF by the **tenth (10th)** day of each month a Collateral Report (as defined below) dated as of the last day of the prior month. Regardless of the SPP terms pertaining to any Collateral financed by CDF, and notwithstanding any scheduled payments made by Dealer after the Determination Date (as defined below) or anything contained in the Agreement to the contrary, if CDF detemines, after reviewing the Collateral Report, after conducting an inspection of the Collateral or otherwise, that (i) the total current outstanding indebtedness owed by Dealer to CDF as of the date of the Collateral Report, inspection or any other date on which a paydown is otherwise required hereunder, as applicable (the "Determination Date"), exceeds (ii) the Collateral Liquidation Value (as defined below) as of the Determination Date by more than Forty Million Dollars ($40,000,000.00), Dealer will immediately upon demand pay CDF the amount by which (i) Dealer's total current outstanding indebtedness owed to CDF as of the Determination Date exceeds (ii) the Collateral Liquidation Value as of the Determination Date by more than Forty Million Dollars ($40,000,000.00).

The term "Collateral Report" is defined herein to mean a report compiled by Dealer specifying the total aggregate wholesale invoice price of all of Dealer's inventory financed by CDF that is unsold and in Dealer's possession and control as of the date of such Report to the extent CDF has a first priority, fully perfected security interest therein.

The term "Collateral Liquidation Value" is defined herein to mean **One Hundred percent (100%)** of the total aggregate wholesale invoice price of all of Dealer's inventory financed by CDF that is unsold and in Dealer's possession and control as of the date of the Collateral Report and to the extent CDF has a first priority, fully perfected security interest therein.

If Dealer from time to time is required to make immediate payment to CDF of any past due obligation discovered during any Collateral review, upon review of a Collateral Report or at any other time, Dealer agrees that acceptance of such payment by CDF shall not be construed to have waived or amended the terms of its financing program.

2.    CDF and Dealer agree that the following paragraph is incorporated into the Agreement as if fully and originally set forth therein:

"Dealer will maintain:

(a) as of the fiscal quarter-end 12/31/06, a Tangible Net Worth and Subordinated Debt ("TNW") in the combined amount of not less than **Five Million Dollars ($5,000,000.00);**

(b) as of the fiscal quarter-end 3/31/07 and each fiscal quarter-end thereafter, a TNW in the combined amount of not less than the sum of (i) **Fifty Percent (50%)** of Net Income for such fiscal quarter plus (ii) the minimum TNW in effect for the immediately preceding fiscal quarter (if Net Income is a negative number for any fiscal quarter (e.g. a loss), such amount shall not reduce Dealer's TNW for that fiscal year, and shall be disregarded for all future TNW calculations so that any such negative number shall not reduce the minimum TNW required hereunder for any subsequent fiscal quarter);

(c) as of the fiscal quarter-end 12/31/06, 3/31/07, 6/30/07 and 9/30/07, a ratio of Debt minus Subordinated Debt to Tangible Net Worth and Subordinated Debt of not more than **Twelve and One-Half to One (12.5:1.0);** and

(d) as of the fiscal quarter-end 12/31/07 and each fiscal quarter-end thereafter, a ratio of Debt minus Subordinated Debt to Tangible Net Worth and Subordinated Debt of not more than **Nine and One-Half to One (9.5:1.0)** .

For purposes of this paragraph:  (i) 'Tangible Net Worth' means the book value of Dealer's assets less liabilities, excluding from such assets all intangibles; (ii) 'Intangibles' means and includes general intangibles; software (purchased or developed in-house); accounts receivable and advances due from officers, directors, employees, stockholders, members, owners and affiliates; leasehold improvements net of depreciation; licenses; good will; prepaid expenses; escrow deposits; covenants not to compete; the excess of cost over book value of acquired assets; franchise fees; organizational costs; finance reserves held for recourse obligations; capitalized research and development costs; the capitalized cost of patents, trademarks, service marks and copyrights net of amortization; and such other similar items as CDF may from time to time determine in CDF's sole discretion; (iii) 'Debt' means all of Dealer's liabilities and indebtedness for borrowed money of any kind and nature whatsoever, whether direct or indirect, absolute or contingent, and including obligations under capitalized leases, guaranties, or with respect to which Dealer has pledged assets to secure performance, whether or not direct recourse liability has been assumed by Dealer; (iv) 'Subordinated Debt' means all of Dealer's Debt which is subordinated to the payment of Dealer's liabilities to CDF by an agreement in form and substance satisfactory to CDF; and (v) 'Net Income' means Dealer's net income or loss after extraordinary items and after provision for income taxes.  All terms used herein to the extent not defined shall be used in accordance with generally accepted accounting principles consistently applied.  All amounts, if applicable, shall be calculated on a consolidated basis."

Dealer waives notice of CDF's acceptance of this Amendment.

All other terms as they appear in the Agreement, to the extent consistent with the foregoing, are ratified and remain unchanged and in full force and effect.

IN WITNESS WHEREOF, Dealer and CDF have executed this Amendment to Inventory Financing Agreement this 21st day of August, 2006.

MUDE USA, LLC

By: _____

Luiz Scarpelli Filho
Authorized Representative

> Formatted: Portuguese (Brazil)

GE COMMERCIAL DISTRIBUTION
FINANCE CORPORATION

By: _____

Christopher J. Wohlert
Vice President of Operations

US001602  5/03 & US000040  1/02
Altered/Approved by 04, 8-21-06

3

## SECOND AMENDMENT TO INVENTORY FINANCING AGREEMENT

This Second Amendment is made to that certain Inventory Financing Agreement entered into by and between MUDE USA, LLC ("Dealer") and GE Commercial Distribution Finance Corporation ("CDF") on August 21, 2006, as amended ("Agreement").

CDF and Dealer agree that Section 1.0 of the Amendment to Inventory Financing Agreement dated as of August 21, 2006 is hereby amended to read as follows, and, to the extent applicable, the following provision shall also amend the IFA (capitalized terms shall have the same meaning as defined in the IFA unless otherwise indicated):

1. Dealer will forward to CDF by the tenth (10th) day of each month a Collateral Report (as defined below) dated as of the last day of the prior month. Regardless of the SPP terms pertaining to any Collateral financed by CDF, and notwithstanding any scheduled payments made by Dealer after the Determination Date (as defined below) or anything contained in the Agreement to the contrary, if CDF determines, after reviewing the Collateral Report, after conducting an inspection of the Collateral or otherwise, that (i) the total current outstanding indebtedness owed by Dealer to CDF as of the date of the Collateral Report, inspection or any other date on which a paydown is otherwise required hereunder, as applicable (the "Determination Date"), exceeds (ii) the Collateral Liquidation Value (as defined below) as of the Determination Date by more than Forty-Two Million Dollars ($42,000,000.00), Dealer will immediately upon demand pay CDF the amount by which (i) Dealer's total current outstanding indebtedness owed to CDF as of the Determination Date exceeds (ii) the Collateral Liquidation Value as of the Determination Date by more than Forty-Two Million Dollars ($42,000,000.00).

   The term "Collateral Report" is defined herein to mean a report compiled by Dealer specifying the total aggregate wholesale invoice price of all of Dealer's inventory financed by CDF that is unsold and in Dealer's possession and control as of the date of such Report to the extent CDF has a first priority, fully perfected security interest therein.

   The term "Collateral Liquidation Value" is defined herein to mean One Hundred percent (100%) of the total aggregate wholesale invoice price of all of Dealer's inventory financed by CDF that is unsold and in Dealer's possession and control as of the date of the Collateral Report and to the extent CDF has a first priority, fully perfected security interest therein.

   If Dealer from time to time is required to make immediate payment to CDF of any past due obligation discovered during any Collateral review, upon review of a Collateral Report or at any other time, Dealer agrees that acceptance of such payment by CDF shall not be construed to have waived or amended the terms of its financing program.

Dealer waives notice of CDF's acceptance of this Amendment.

All other terms as they appear in the Agreement, to the extent consistent with the foregoing, are ratified and remain unchanged and in full force and effect.

IN WITNESS WHEREOF, Dealer and CDF have executed this Amendment to Inventory Financing Agreement this 11th day of April, 2007.

MUDE USA, LLC

By: _____
Jose Roberto Pernomian
Authorized Representative

GE COMMERCIAL DISTRIBUTION
FINANCE CORPORATION

By: _____
Christopher J. Wohlert
Vice President of Operations

## THIRD AMENDMENT TO INVENTORY FINANCING AGREEMENT

This Third Amendment is made to that certain Inventory Financing Agreement entered into by and between **MUDE USA, LLC** ("Dealer") and **GE Commercial Distribution Finance Corporation** ("CDF") on August 21, 2006, as amended ("Agreement").

CDF and Dealer agree that Section 2.0 of the Amendment to Inventory Financing Agreement dated as of August 21, 2006 is hereby amended to read as follows, and, to the extent applicable, the following provision shall also amend the IFA (capitalized terms shall have the same meaning as defined in the IFA unless otherwise indicated):

1. Dealer will forward to CDF by the **tenth (10th)** day of each month a Collateral Report (as defined below) dated as of the last day of the prior month. Regardless of the SPP terms pertaining to any Collateral financed by CDF, and notwithstanding any scheduled payments made by Dealer after the Determination Date (as defined below) or anything contained in the Agreement to the contrary, if CDF determines, after reviewing the Collateral Report, after conducting an inspection of the Collateral or otherwise, that (i) the total current outstanding indebtedness owed by Dealer to CDF as of the date of the Collateral Report, inspection or any other date on which a paydown is otherwise required hereunder, as applicable (the "Determination Date"), exceeds (ii) the Collateral Liquidation Value (as defined below) as of the Determination Date by more than Forty-Four Million Dollars ($44,000,000.00), Dealer will immediately upon demand pay CDF the amount by which (i) Dealer's total current outstanding indebtedness owed to CDF as of the Determination Date exceeds (ii) the Collateral Liquidation Value as of the Determination Date by more than Forty-Four Million Dollars ($44,000,000.00).

   The term "Collateral Report" is defined herein to mean a report compiled by Dealer specifying the total aggregate wholesale invoice price of all of Dealer's inventory financed by CDF that is unsold and in Dealer's possession and control as of the date of such Report to the extent CDF has a first priority, fully perfected security interest therein.

   The term "Collateral Liquidation Value" is defined herein to mean **One Hundred percent (100%)** of the total aggregate wholesale invoice price of all of Dealer's inventory financed by CDF that is unsold and in Dealer's possession and control as of the date of the Collateral Report and to the extent CDF has a first priority, fully perfected security interest therein.

   If Dealer from time to time is required to make immediate payment to CDF of any past due obligation discovered during any Collateral review, upon review of a Collateral Report or at any other time, Dealer agrees that acceptance of such payment by CDF shall not be construed to have waived or amended the terms of its financing program.



Dealer waives notice of CDF's acceptance of this Amendment.

All other terms as they appear in the Agreement, to the extent consistent with the foregoing, are ratified and remain unchanged and in full force and effect.

IN WITNESS WHEREOF, Dealer and CDF have executed this Amendment to Inventory Financing Agreement this 9th day of August, 2007.

MUDE USA, LLC

By: _____
Jose Roberto Pernomian
Authorized Representative

GE COMMERCIAL DISTRIBUTION
FINANCE CORPORATION

By: _____
Christopher J. Wohlert
Vice President of Operations

# EXHIBIT B

# STATE OF FLORIDA UNIFORM COMMERCIAL CODE FINANCING STATEMENT FORM

**A. NAME & DAYTIME PHONE NUMBER OF CONTACT PERSON**
Michelle Granich 314.317.1759

**B. SEND ACKNOWLEDGEMENT TO:**
Name  Michelle Granich

Address PO Box 411934

Address

City/State/Zip  St. Louis, MO  63141

**FLORIDA SECURED TRANSACTION REGISTRY**

# FILED

**2006 Aug 03 AM 12:00**

****** 200603329347 ******

TI

**1. DEBTOR'S EXACT FULL LEGAL NAME – INSERT ONLY ONE DEBTOR NAME (1a OR 1b) – Do Not Abbreviate or Combine Names**

| 1a. ORGANIZATION'S NAME  MUDE USA, LLC | | | |
|---|---|---|---|

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 1c. MAILING ADDRESS  5201 Blue Lagoon Drive, Suite 802 | CITY  Miami | STATE  FL | POSTAL CODE  33126 | COUNTRY  USA |
|---|---|---|---|---|

| 1d. TAX ID# | REQUIRED ADD'L INFO RE: ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION  Limited Liability Company | 1f. JURISDICTION OF ORGANIZATION  Florida | 1g. ORGANIZATIONAL ID#  L06000019037  ☐NONE |
|---|---|---|---|---|

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME – INSERT ONLY ONE DEBTOR NAME (2a OR 2b) – Do Not Abbreviate or Combine Names**

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

| 2d. TAX ID# | REQUIRED ADD'L INFO RE: ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID#  ☐NONE |
|---|---|---|---|---|

**3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) – INSERT ONLY ONE SECURED PARTY NAME (3a OR 3b)**

| 3a. ORGANIZATION'S NAME  GE Commercial Distribution Finance Corporation | | | |
|---|---|---|---|

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 3c. MAILING ADDRESS  PO Box 411934 | CITY  St. Louis | STATE  MO | POSTAL CODE  63141 | COUNTRY |
|---|---|---|---|---|

**4. This FINANCING STATEMENT covers the following collateral:**

This financing statement covers all personal property of debtor, whether such property or debtor's right, title or interest therein or thereto is now owned or existing or hereafter acquired or arising, and wherever located, including, without limitation, all accounts, inventory, equipment, fixtures, other goods, general intangibles (including, without limitation, payment intangibles), chattel paper (whether tangible or electronic), instruments (including, without limitation, promissory notes), deposit accounts, investment property and documents, and all products and proceeds of the foregoing. Without limiting the foregoing, the collateral includes debtor's right to all price protection payments, rebates, discounts, credits, factory holdbacks, incentive payments and any other amounts due debtor at any time from a person from whom debtor has purchased inventory or other personal property. In addition, the collateral includes, without limitation, all books and records, electronic or otherwise, which evidence or otherwise relate to any of the foregoing property, and all computers, disks, tapes, media and other devices in which such records are stored.

**5. ALTERNATE DESIGNATION (if applicable)**  ◯ LESSEE/LESSOR  ◯ CONSIGNEE/CONSIGNOR  ◯ BAILEE/BAILOR  ◯ AG. LIEN  ◯ NON-UCC FILING  ◯ SELLER/BUYER

**6. Florida DOCUMENTARY STAMP TAX – YOU ARE REQUIRED TO CHECK EXACTLY ONE BOX**

◯ All documentary stamps due and payable or to become due and payable pursuant to s. 201.22 F.S., have been paid.

◉ Florida Documentary Stamp Tax is not required.

**7. OPTIONAL FILER REFERENCE DATA**

STANDARD FORM - FORM UCC-1 (REV.12/2001)          Filing Office Copy          Approved by the Secretary of State, State of Florida

## STATE OF FLORIDA UNIFORM COMMERCIAL CODE FINANCING STATEMENT AMENDMENT FORM

**A. NAME & DAYTIME PHONE NUMBER OF CONTACT PERSON**
Cassandra Gude 770-850-4090

**B. SEND ACKNOWLEDGEMENT TO:**
Name  GECDF
Address  3330 Cumberland Blvd., Suite 330
Address
City/State/Zip  Atlanta, GA 30339

**FLORIDA SECURED TRANSACTION REGISTRY**

# FILED
## 2007 Jan 30 AM 12:00
**** 200704694911 ****
***C * 01300785775701-12.00***12.00***

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE # 200603329347 | 1b. | This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. |
|---|---|---|

**2. CURRENT RECORD INFORMATION – DEBTOR NAME – INSERT ONLY ONE DEBTOR NAME (2a OR 2b)**

| 2a. ORGANIZATION'S NAME  Nude USA, LLC | | | |
|---|---|---|---|
| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

**3. CURRENT RECORD INFORMATION – SECURED PARTY NAME – INSERT ONLY ONE SECURED PARTY NAME (3a OR 3b)**

| 3a. ORGANIZATION'S NAME  GE Commercial Distribution Finance Corporation | | | |
|---|---|---|---|
| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

**4.** ☐ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

**5.** ☐ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

**6.** ☐ ASSIGNMENT (full or partial): Give name of assignee in item 9a or 9b and address of assignee in item 9c; and also give name of assignor in item 11.

**7.** ☑ AMENDMENT (PARTY INFORMATION): This Amendment affects ☐ Debtor or ☑ Secured Party of record. Check only one of these two boxes.

Also check one of the following three boxes and provide appropriate information in items 8 and/or 9.
☑ CHANGE name and/or address: Give current record name in item 8a or 8b; Also give new name (if name change) in item 9a or 9b and/or new address (if address change) in item 9c.    ☐ DELETE name: Give record name to be deleted in item 8a or 8b.    ☐ ADD name: Complete item 9a or 9b, and 9c; also complete items 9d-9g (if applicable).

**8. CURRENT RECORD INFORMATION – INSERT ONLY ONE NAME (8a OR 8b) – Do Not Abbreviate or Combine Names**

| 8a. ORGANIZATION'S NAME  GE Commercial Distribution Finance Corporation | | | |
|---|---|---|---|
| 8b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

**9. CHANGED (NEW) OR ADDED INFORMATION – INSERT ONLY ONE NAME (9a OR 9b) – Do Not Abbreviate or Combine Names**

| 9a. ORGANIZATION'S NAME  GE Commercial Distribution Finance Corporation | | | | |
|---|---|---|---|---|
| 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | SUFFIX |
| 9c. MAILING ADDRESS  P. O. Box 723476 | CITY  Atlanta | STATE  GA | POSTAL CODE  31139 | COUNTRY  USA |
| 9d. TAX ID# | 9e. REQUIRED ADD'L INFO RE: ORGANIZATION DEBTOR | 9e. TYPE OF ORGANIZATION | 9f. JURISDICTION OF ORGANIZATION | 9g. ORGANIZATIONAL ID# ☐ NONE |

**10. AMENDMENT (COLLATERAL CHANGE): check only one box.**
Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

**11. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT** (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor, which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.

| 11a. ORGANIZATION'S NAME  GE Commercial Distribution Finance Corporation | | | |
|---|---|---|---|
| 11b. INDIVIDUALS' LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

**12. OPTIONAL FILER REFERENCE DATA**

| STANDARD FORM - FORM UCC-3  (REV.12/2001) | Filing Office Copy | Approved by the Secretary of State, State of Florida |
|---|---|---|

16842

# FLORIDA SECURED TRANSACTION REGISTRY

GECDF
3330 SUMBERLAND BLVD., SUITE 330
ATLANTA GA 30339

UCC number 200704694911 has been filed with the Florida Secured Transaction Registry. The expiration date for the filing is 08/03/2011.

Complete information related to the UCC filing is available on the internet at www.FloridaUCC.com. It is your responsibility to review all information associated with this filing to ensure information has been recorded correctly.

Please note: the State of Florida has approved revised versions of the following forms:
1) State of Florida Uniform Commercial Code Financing Statement Form (Form UCC-1)
2) State of Florida Uniform Commercial Code Financing Statement Form - Addendum (Form UCC-1 Addendum)
3) State of Florida Uniform Commercial Code Financing Statement Amendment Form (Form UCC-3)
4) State of Florida Uniform Commercial Code Financing Statement Amendment Form - Addendum (Form UCC-3 - Addendum)

These forms are available for download from: www.FloridaUCC.com.

If you have questions or concerns about this filing, please call FLORIDAUCC, Inc. at
(850) 222-8526.

# EXHIBIT C



**GE Commercial Distribution Finance**

October 16, 2007

**FEDERAL EXPRESS: 74071444742**

Mude USA
5201 Blue Lagoon Drive Ste 935
Miami, Florida 33126
RE:    Notice of Default & Demand for Cure

Dear Jose Roberto Pernamiam:

Reference is made to that certain Inventory Financing Agreement by and between MUDE USA, LLC., a Florida limited liability company, ("Dealer") and GE Commercial Distribution Finance Corporation ("CDF") dated as of August 21, 2006, and all amendments, program letters, agreements and other documents executed in connection therewith ("Agreement").

CDF hereby notifies you that CDF is aware that one or more of Dealer's major customers of CDF Collateral are the subject of recent police activity in Brazil that may involve CDF Collateral. As a result, CDF believes that a material adverse change has occurred in the business and operations of Dealer and CDF deems itself insecure with respect to payment for such Collateral. Under these circumstances, Dealer is in breach of Sections 11(k) and 11(n) of the Agreement resulting in a default under the Agreement. As a result, Dealer's credit facility has been suspended and Dealer's warehouseman (Freight Logistics, Inc.), has been notified, pursuant to the Agreement Regarding Release of Goods, dated May 1, 2007, to suspend further withdrawal of CDF Collateral from the warehouse.

In the event that this situation is not promptly cured to CDF's satisfaction, CDF may, at its option, exercise all rights and remedies available to it under the Agreement and applicable law, including but not limited to the right to declare the entire unpaid principal balance and all accrued and unpaid interest and/or other charges thereon immediately due and payable. Dealer is additionally liable for expenses and costs (including but not limited to reasonable attorneys' fees) incurred by CDF in connection with the collection of this amount, as well as for any ongoing interest and/or other charges accruing after the date hereof.

CDF expects Dealer to strictly adhere to the provisions of the Agreement and to perform its obligations there under accordingly. Despite any forbearance by CDF in exercising its rights against Dealer, CDF does not and has not waived its right to pursue any and all remedies available to CDF. Any delay or forbearance by CDF in the exercise of its rights shall not operate as a waiver of those rights. CDF specifically reserves all rights available to it under the Agreement or by law and reserves its rights to exercise such remedies as CDF deems necessary to protect its interests.

We look forward to your prompt payment.

Sincerely,

GE COMMERCIAL DISTRIBUTION FINANCE CORPORATION

By:

Name:    Chris Wohlert

Title:    Vice President of Operations

cc:    [Guarantors]

CDF 65500 modified 67280

# EXHIBIT D



<u>VIA DHL# 74071443143</u>
October 18, 2007

MUDE USA, LLC
5301 Blue Lagoon Drive, Suite
Miami, Fl, 33126

RE: Notice of Acceleration & Termination

Gentlemen:

Reference is made to that certain Inventory Financing Agreement by and between MUDE USA, LLC., a Florida Limited Liability Company ("Dealer") and GE Commercial Distribution Finance Corporation, ("CDF") dated as of August 21, 2006, and all amendments, program letters, agreements and other documents executed in connection therewith (the "Agreement).

CDF notified Dealer by letter dated October 16, 2007, of Dealer's default and of CDF's intent to accelerate the payment of all debt owed to CDF if Dealer did not cure the default. Dealer has failed to cure the default.

Therefore, CDF hereby terminates Dealer's credit facility and demands payment from Dealer in the amount of $60,661,915.41, which represents the principal balance of $60,611,979.69, and $49,935.72 for interest and other charges accrued through October 5, 2007. This sum may be increased by any additional invoices which may not yet have been received but for which CDF may be obligated, any repossession costs, any interest charges from the last billing date until this sum is paid in full and any other costs or expenses for which Dealer is liable, including reasonable attorneys' fees.

By copy of this letter I am informing **Mude Comercio e Servicos, Ltda., Logcis Export, LLC, Moacyr Alvaro Sampaio, Maria Ines Garcia Sampaio, Fernando Machado Grecco, Helio Benetti Pedreira, Marita Dalla Costa Pedreira, and Luiz Scarpelli Filho** of the acceleration of Dealer's debt and hereby make demand pursuant to their guaranty of this obligation which gives rise to their personal obligation to pay this sum plus all costs and expenses, including attorney fees.

Any delay or forbearance by CDF in the exercise of its rights as a result of this default will not operate as a waiver of those rights. CDF reserves its right to exercise such remedies as CDF deems necessary to protect its interests.

CDF anticipates Dealer's full cooperation in this matter.

Sincerely,

GE COMMERCIAL DISTRIBUTION FINANCE CORPORATION

By:
Name:    Christopher W Wohlert
Title:    Vice President, Operations

cc:    See Next Page

NOTICE:    The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicants' income derives from any public assistance program; or because the applicant in good faith exercised any right under the Consumer Credit Protection Act. The federal agency that administers compliance with this law concerning this creditor is The Federal Trade Commission, Equal Credit Opportunity, Washington, D.C. 20580.

CDF 65501 modified 67582
GE Commercial Distribution Finance Corporation

Notice of Acceleration and Termination
Page 2 of 2

CC:

Logcis Export, LLC                    VIA DHL#74071443644
Attn:  Luiz Scarpelli
5201 Blue Lagoon, Suite 802
Miami, FL 33126

Moacyr Alvaro Sampaio               VIA DHL#8080005500
Rue Do Poente 148
Parque Silvino Pereira
Cotia, Sao Paulo, Brazil 04725-050

Fernando Machado Grecco              VIA DHL#8080005430
Rua Dos Moras 390 41
Sao Paulo, Brazil 05434-020

Helio Benetti Pedreira              VIA DHL#8080005511
Praca Pereira Coutinho 175 41
Sao Paulo, Brazil 04510-010

Luiz Scarpelli Filho                VIA DHL#8080005533
Rua Gabriele D'Annunzio 125 142
Soo Paulo, Brazil 04619-000

Mude Comercio e Servicos, Ltda.     VIA DHL#8080005603
Avenue Dr Dib Sauaia, Neto, 392
Alphaville, CEP 06465-140

Maria Ines Garcia Sampaio           VIA DHL#8080005662
Rua Do Ponte 148
Parque Silvino Pereira
Cotia, Sao Paulo, Brazil  04725-050

Marita Dalla Costa Pedreira         VIA DHL#8080005640
Praca Pereira Cotinho 175 41
Sao Paulo, Brazil 04534-020

Bond No. 6533840

# IN THE CIRCUIT COURT OF THE TWELFTH JUDICIAL CIRCUIT OF ILLINOIS
## WILL COUNTY

| | |
|---|---|
| GE COMMERCIAL DISTRIBUTION, FINANCE CORP., | ) ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CASE NO. 08 L 08L 045 |
| | ) |
| MUDE USA, LLC, | ) |
| | ) |
| Defendant. | ) |

## ATTACHMENT BOND

KNOW ALL PERSONS BY THESE PRESENTS, that the undersigned, GE COMMERICAL DISTRIBUTION FINANCE CORP. ("Plaintiff"), an corporation organized and existing under the laws of the State of Delaware and qualified to do business in the State of Illinois, with its principal place of business at 5595 Trillium Boulevard, Hoffman Estates, Illinois 60192, is held and firmly bound unto the People of the State of Illinois, in the penal sum of Three Million Dollars ($3,000,000), for the payment of which sum we do hereby bind ourselves, our heirs, executors and administrators.

THE CONDITION OF THIS OBLIGATION IS SUCH, that whereas the Plaintiff has on January 17, 2008, applied for an order of attachment in the above entitled action of Plaintiff against the estate of the above named defendant MUDE USA, LLC ("Defendant"), seeking the attachment and garnishment of the Defendant's Account No. 320048690 at Citibank, N.A., 691 Brook Forest Avenue, Shorewood, Illinois 60404. Now, if the Plaintiff shall prosecute the action with effect, or in the case of failure therein shall satisfy all costs which may be awarded to Defendant or to any person or persons interested in the property attached, and all damages and costs which shall be recovered against the Plaintiff for wrongfully obtaining the order for attachment, then the above obligation to be void; otherwise to remain in full force and effect.

Bond No. 6533840

Witness our hands hereto this ___14th___ day of January, 2008.

_____

GE COMMERCIAL DISTRIBUTION
FINANCE CORP., Principal, by and through
its Authorized Agent and Attorney-in-Fact

_____

SAFECO INSURANCE COMPANY OF
AMERICA, as SURETY, by and through its
Authorized Agent and
Attorney-in-Fact: William Reidinger

    SUBSCRIBED AND SWORN to before me by Principal's Authorized Agent and
Attorney-in Fact, _Jeffrey A. Ryva_____, this _14th_____ day     of
January, 2008.

_____Janice L. Bohm_____
        Notary Public

My commission expires:

_4-2-09_____

> OFFICIAL SEAL
> JANICE L. BOHM
> NOTARY PUBLIC, STATE OF ILLINOIS
> MY COMMISSION EXPIRES 04/02/09

6533840 Attachment Bond.doc         2

Bond No. 6533840

SUBSCRIBED AND SWORN to before me by Surety's Authorized Agent and Attorney-in-Fact, <u>William Reidinger</u>, this _____ <u>14th</u> _____ day of January, 2008.

_Karen E. Bogard_
_____
Notary Public

My commission expires:

_____ April 1, 2008. _____

```
"OFFICIAL SEAL"
KAREN E. BOGARD
NOTARY PUBLIC, STATE OF ILLINOIS
My Commission Expires 4/1/08
```



**POWER OF ATTORNEY**

Safeco Insurance Company of America
General Insurance Company of America
Safeco Plaza
Seattle, WA 98185

**KNOW ALL BY THESE PRESENTS:**

No. 13024

That SAFECO INSURANCE COMPANY OF AMERICA and GENERAL INSURANCE COMPANY OF AMERICA, each a Washington corporation, does each hereby appoint

*****KAREN E. BOGARD; MATTHEW V. BUOL; DIANE M. O'LEARY; WILLIAM REIDINGER; MARVIN O. RIVERA; DONNA WRIGHT; Chicago, Illinois***********************************************************************************************

its true and lawful attorney(s)-in-fact, with full authority to execute on its behalf fidelity and surety bonds or undertakings and other documents of a similar character issued in the course of its business, and to bind the respective company thereby.
IN WITNESS WHEREOF, SAFECO INSURANCE COMPANY OF AMERICA and GENERAL INSURANCE COMPANY OF AMERICA have each executed and attested these presents

this ____17th____ day of ____December____ ____2007____

_Stephanie Daley Watson_
**STEPHANIE DALEY-WATSON, SECRETARY**

_T A Mikolajewski_
**TIM MIKOLAJEWSKI, SENIOR VICE-PRESIDENT, SURETY**

**CERTIFICATE**

Extract from the By-Laws of SAFECO INSURANCE COMPANY OF AMERICA
and of GENERAL INSURANCE COMPANY OF AMERICA:

"Article V, Section 13. - FIDELITY AND SURETY BONDS ... the President, any Vice President, the Secretary, and any Assistant Vice President appointed for that purpose by the officer in charge of surety operations, shall each have authority to appoint individuals as attorneys-in-fact or under other appropriate titles with authority to execute on behalf of the company fidelity and surety bonds and other documents of similar character issued by the company in the course of its business... On any instrument making or evidencing such appointment, the signatures may be affixed by facsimile. On any instrument conferring such authority or on any bond or undertaking of the company, the seal, or a facsimile thereof, may be impressed or affixed or in any other manner reproduced; provided, however, that the seal shall not be necessary to the validity of any such instrument or undertaking."

Extract from a Resolution of the Board of Directors of SAFECO INSURANCE COMPANY OF AMERICA
and of GENERAL INSURANCE COMPANY OF AMERICA adopted July 28, 1970.

"On any certificate executed by the Secretary or an assistant secretary of the Company setting out,
    (i)  The provisions of Article V, Section 13 of the By-Laws, and
    (ii)  A copy of the power-of-attorney appointment, executed pursuant thereto, and
    (iii)  Certifying that said power-of-attorney appointment is in full force and effect,
the signature of the certifying officer may be by facsimile, and the seal of the Company may be a facsimile thereof."

I, Stephanie Daley-Watson    , Secretary of SAFECO INSURANCE COMPANY OF AMERICA and of GENERAL INSURANCE COMPANY OF AMERICA, do hereby certify that the foregoing extracts of the By-Laws and of a Resolution of the Board of Directors of these corporations, and of a Power of Attorney issued pursuant thereto, are true and correct, and that both the By-Laws, the Resolution and the Power of Attorney are still in full force and effect.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed the facsimile seal of said corporation

this ____14th____ day of ____January____ , ____2008____

_Stephanie Daley Watson_
**STEPHANIE DALEY-WATSON, SECRETARY**

Safeco® and the Safeco logo are registered trademarks of Safeco Corporation.

S-0974/DS 4/05

WEB PDF

IN THE CIRCUIT COURT OF THE TWELFTH JUDICIAL CIRCUIT OF ILLINOIS
WILL COUNTY

GE COMMERCIAL DISTRIBUTION,       )
FINANCE CORP.,                    )
                                  )        BOND NO. _____    08L  0.45
                Plaintiff,        )
                                  )        BOND NO. _____
        vs.                       )
                                  )        CASE NO. 08 L _____
MUDE USA, LLC,                    )
                                  )
                Defendant.        )

## EX PARTE MOTION FOR (I) ORDER OF
## ATTACHMENT AND (II) GARNISHMENT IN AID OF ATTACHMENT

Now comes Plaintiff, GE COMMERCIAL DISTRIBUTION FINANCE CORP. ("CDF"), by its attorneys, HUSCH & EPPENBERGER, LLC, and for its Motion For (I) Order Of Attachment And (II) Garnishment In Aid Of Attachment (the "Motion"), states as follows:

### GENERAL BACKGROUND

1.      Concurrently with the filing of this Motion, CDF filed, among other documents, the Affidavit of Christopher J. Wohlert in Support of the Motion, and the Verified Complaint for Damages in this action against Defendant MUDE USA, LLC ("Mude").

2.      On or about August 12, 2006, CDF and Mude entered into that certain Inventory Financing Agreement, and subsequent amendments thereto (collectively, the "Security Agreement"), pursuant to which CDF agreed to finance Mude's purchase of electronics inventory, including, but not limited to routers and electronic networking products.

3.      According to the provisions of the Security Agreement, CDF extended credit to Mude pursuant to the general terms contained in the Security Agreement and pursuant to the

terms of the Transaction Statements to be sent to Mude with respect to specific transactions as is more fully set forth in Section 2 of the Security Agreement.

4.    To secure the amounts due and to become due under the Security Agreement, Mude granted CDF a security interest in, among other property, the following:

> all personal property of [Mude], whether such property or Mude's right, title or interest therein or thereto is now owned or existing or hereafter acquired or arising, and wherever located, including without limitation, all Accounts, Inventory, Equipment, Fixtures, other Goods, General Intangibles (including without limitation, Payment Intangibles), Chattel Paper (whether tangible or electronic), Instruments (including without limitation, Promissory Notes), **_Deposit Accounts_**, Investment Property and Documents and all Products and Proceeds of the foregoing. Without limiting the foregoing, the Collateral includes Dealer's right to all Vendor Credits (as defined in the Security Agreement) (collectively, the "Collateral") (emphasis added).

5.    CDF perfected its security interest in the Collateral by filing a UCC-1 Financing Statement with the Florida Secretary of State on August 3, 2006.

6.    Pursuant to Section 26(g) of the Security Agreement all disputes thereunder are subject to binding arbitration, except that nothing in the Security Agreement prevents CDF from initiating an action for the purpose of seeking provisional remedies, including attachment, injunction, and/or any prejudgment or provisional remedy relating to any Collateral for any current or future debt owed by Mude to CDF.

7.    Pursuant to the terms of the Security Agreement, CDF extended credit to Mude for Mude's purchase of inventory and allowed Mude to take possession of the inventory.

8.    On October 16, 2007, CDF sent Mude a Notice of Default & Demand for Cure (the "Notice of Default"), advising Mude that CDF was aware that one or more of Mude's major customers of Collateral are the subject of recent police activity in Brazil. Accordingly, CDF further advised Mude that it was in breach of sections 11(k) and 11(n) of the Security Agreement

due to a material adverse change in the business and operations of Mude. Mude did not cure its defaults under the Security Agreement.

9. On October 18, 2007, CDF sent Mude a Notice of Acceleration & Termination (the "Notice of Termination"), pursuant to which CDF terminated Mude's credit facility and demanded payment from Mude in the amount of $60,661,915.41, plus accruing interest after October 6, 2007, costs and fees.

10. As a proximate result of Mude's breach of the Security Agreement, as of December 31, 2008, CDF has suffered damages in the sum of no less than $52,786,203, which is comprised of the principal balance as of January 15, 2008, in the amount of $51,688,885 and accrued and unpaid interest as of January 5, 2008, in the amount of $1,097,345.37. Late charges and interest continue to accrue. Mude has paid no part of such amounts.

11. Mude has an account with Citibank, N.A., Account No. 320048690 (the "Mude Bank Account"). On information and belief, the Mude Bank Account may contain approximately $1.5 million.

12. Citibank, N.A., has a branch located in Will County, Illinois, at 691 Brook Forest Avenue, Shorewood, Illinois 60404.

## RELIEF REQUESTED

**A.    Order of Attachment**

13. CDF has satisfied the statutory requirements for the Court's entry of an Order of Attachment. 735 ILCS 5/4-101 provides that:

> In any court having competent jurisdiction, a creditor having a money claim, whether liquidated or unliquidated . . . may have an attachment against the property of his or her debtor, either at the time of commencement of the action or thereafter, when the claim exceeds $20, in any one of the following cases:
>
> 1.     Where the debtor is not a resident of this State . . . .

2870780.02

735 ILCS 5/4-101.

14.    Venue is proper in this Court, pursuant to 735 ILCS 5/2-101, because (i) the Inventory Financing Agreement was negotiated and substantially performed by CDF and Mude in the State of Illinois; (ii) Mude is not a resident of Illinois; and (iii) the property that CDF seeks the Court's authority to attach is located at Citibank, N.A., which bank has a branch in Will County, Illinois, located at 691 Brook Forest Avenue, Shorewood, Illinois 60404.

15.    As set forth above and in the Verified Complaint, filed concurrently herewith, CDF has a claim against Mude in an amount no less than $52,786,203.

16.    Mude is not a resident of the State of Illinois.

17.    Based on the foregoing, CDF has satisfied the statutory requirements set forth in ILCS 5/4-101 for entry of an order of attachment against the Mude Bank Account.

18.    CDF respectfully requests that, pursuant to ILCS 5/4-108, the Court fix the amount of the Attachment Bond in the amount of $3,000,000, which is two times the value of funds believed to be in the Mude Bank Account. In the event that the funds in the account exceed $1.5 million, CDF will increase the amount of the Attachment Bond to twice the amount of funds in the Bank Account.

**B.    Garnishment in Aid of Attachment**

19.    CDF seeks the Court's authority to garnish Citibank, N.A., because the Mude property that CDF seeks to attach is not in the possession of the Defendant Mude, but is held at Citibank, N.A., Account No. 320048690. Garnishee Citibank, N.A., has a branch located in Will County, Illinois, at 691 Brook Forest Avenue, Shorewood, Illinois 60404.

20.    Pursuant to 735 ILCS 5/4-126, CDF is entitled to an order directing Citibank, N.A., to: (i) hold all funds in Account No. 320048690, subject to further order of this Court; and

2870780.02

(ii) not pay to the Mude, or any other person, any of the funds in Account No. 320048690, pending further order of this Court.

WHEREFORE, CDF respectfully requests that this Court enter an Order granting this Motion for (I) Order of Attachment and (II) Garnishment in Aid of Attachment and direct the Sheriff for Will County to serve a Writ of Pre-Judgment Attachment on: (i) on Defendant MUDE USA, LLC, with respect to its account with Citibank, N.A., No. 320048690; and (ii) Citibank, N.A., as garnishee, at 691 Brook Forest Avenue, Shorewood, Illinois 60404.

GE COMMERCIAL DISTRIBUTION FINANCE CORP., Plaintiff

By: _____

HUSCH & EPPENBERGER, LLC, Its Attorneys

JEFFREY ALAN RYVA
HUSCH & EPPENBERGER, LLC
401 Main Street, Suite 1400
Peoria, Illinois 61602-1241
Telephone: (309) 637-4900
Facsimile: (309) 637-4928

2870780.02

IN THE CIRCUIT COURT OF THE TWELFTH JUDICIAL CIRCUIT OF ILLINOIS
WILL COUNTY

| | | |
|---|---|---|
| GE COMMERCIAL DISTRIBUTION, FINANCE CORP., | ) ) | |
| Plaintiff, | ) | BOND NO. _____ |
| | ) | |
| vs. | ) | CASE NO. 08 L _____ |
| | ) | |
| MUDE USA, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**AFFIDAVIT OF MARSHALL C. TURNER IN
SUPPORT OF EX PARTE MOTION FOR (I) ORDER OF
ATTACHMENT AND (II) GARNISHMENT IN AID OF ATTACHMENT**

| | | |
|---|---|---|
| STATE OF MISSOURI | ) | |
| | ) | ss. |
| COUNTY OF ST. LOUIS | ) | |

Marshall C. Turner, being duly sworn says:

1.     I am over 18 years of age and I am legally competent to make this Affidavit,
which is true and correct based on my personal knowledge as an associate at Husch &
Eppenberger, LLC, counsel to Plaintiff GE COMMERCIAL DISTRIBUTION FINANCE Corp.
("CDF"). I am an attorney licensed, and in good standing, in the States of Missouri and New
York.

2.     On January 17, 2008, I searched the website for the Illinois Secretary of State
(<http://www.ilsos.gov/corporatellc/>) to see whether Defendant MUDE USA, LLC, a limited
liability company organized under the laws of the State of Florida, has any registrations on file
with the Illinois Secretary of State. The search on Mude, Mude USA, and Mude USA, LLC
yielded the following response: "Your search for [Mude, Mude USA, and Mude USA, LLC],
did not match any records in the Corporation/LLC-GS Search database." It is my understanding
that the Corporation/LLC-GS Search database returns results for foreign corporations and limited

liability companies that have registered in the State of Illinois.  Attached as Exhibit A hereto are the results of the foregoing searches.

3.    In addition on January 17, 2008, I searched each of the following websites, <http://www.whitepages.com>, <http://www.yellowpages.com>, and <http://maps.google.com/maps?hl=en&tab=wl>, to see whether there were any business location listings in the State of Illinois for Mude, Mude USA, and Mude USA, LLC.  None of those searches returned any business locations for Mude USA, LLC, in the State of Illinois.

4.    Based on the foregoing searches, I do not believe that Mude USA, LLC, is registered in the State of Illinois or has any business locations in the State of Illinois.

FURTHER AFFIANT SAYETH NOT.

_____
Marshall C. Turner, Esq.

THE FOREGOING SUBSCRIBED AND SWORN to before me this *18th* day of January, 2008 by Marshall C. Turner.

_____
Notary Public

My Commission Expires:

Aug 27, 2010

```
KRISTY SCHIRES
Notary Public - Notary Seal
State of Missouri
St. Charles County
My Commission Expires Aug. 27, 2010
Commission # 06394549
```

# EXHIBIT A

CORP/LLC - CERTIFICATE OF GOOD STANDING

Page 1 of 1



SERVICES    PROGRAMS    PRESS    PUBLICATIONS    DEPARTMENTS    CONTACT

## CORP/LLC - CERTIFICATE OF GOOD STANDING

**Your search for mude, did not match any records in the Corporation/LLC-GS Search database.**

**Please try again.**

Return to Search

BACK TO CYBERDRIVEILLINOIS.COM HOME PAGE



| SERVICES | PROGRAMS | PRESS | PUBLICATIONS | DEPARTMENTS | CONTACT |

## CORP/LLC - CERTIFICATE OF GOOD STANDING

**Your search for mude usa, did not match any records in the Corporation/LLC-GS Search database.**

**Please try again.**

Return to Search

BACK TO CYBERDRIVEILLINOIS.COM HOME PAGE

CORP/LLC - CERTIFICATE OF GOOD STANDING    Page 1 of 1



SERVICES    PROGRAMS    PRESS    PUBLICATIONS    DEPARTMENTS    CONTACT

## CORP/LLC - CERTIFICATE OF GOOD STANDING

**Your search for mude usa llc, did not match any records in the Corporation/LLC-GS Search database.**

**Please try again.**

Return to Search

BACK TO CYBERDRIVEILLINOIS.COM HOME PAGE

IN THE CIRCUIT COURT OF THE TWELFTH JUDICIAL CIRCUIT OF ILLINOIS
WILL COUNTY

GE COMMERCIAL DISTRIBUTION,     )
FINANCE CORP.,                  )
                    Plaintiff,  )     BOND NO. _____
                                )
            vs.                 )     CASE NO. 08 L 08L  0 45
                                )
MUDE USA, LLC,                  )
                                )
                    Defendant.  )

**AFFIDAVIT OF CHRISTOPHER J. WOHLERT IN
SUPPORT OF EX PARTE MOTION FOR (I) ORDER OF
ATTACHMENT AND (II) GARNISHMENT IN AID OF ATTACHMENT**

STATE OF GEORGIA     )
                     )  ss.
COUNTY OF COBB       )

Christopher J. Wohlert, being duly sworn says:

1.     I am over 18 years of age and I am legally competent to make this Affidavit,

which is true and correct based on my personal knowledge as Vice President of Operations and

as a custodian of the books, records, and files of Plaintiff GE COMMERCIAL DISTRIBUTION

FINANCE Corp. ("CDF"), as they pertain to the obligations of Defendant MUDE USA, LLC

("Defendant") referenced herein. I have personally worked on CDF's books, records, and files,

and, as to the following facts I know them to be true to my own knowledge or have gained

knowledge of them from CDF's books, records, and files. CDF's books, records, and files are

kept under my supervision. The information recorded in those books, records, and files was

recorded in the ordinary course of CDF's business at or about the time of the incidents referred

to in the records by a person who had personal knowledge of the event being recorded and has or

had a business duty to accurately record such information.

2.     I am the authorized representative of CDF, Plaintiff in the above-styled and

numbered lawsuit.

2870783.01

3.    CDF has a just claim against Defendant on account of Defendant's breach of that certain Inventory Financing Agreement, dated on or about August 12, 2006, as subsequently amended (collectively, the "Security Agreement"), between CDF and Defendant.

4.    I believe that CDF is entitled to recover from Defendant, after allowing all just credits and set-offs, an amount no less than $52,786,203, which is comprised of the principal balance as of January 15, 2008, in the amount of $51,688,858 and accrued and unpaid interest as of January 5, 2008, in the amount of $1,097,345.  I have good reason to believe that the Defendant is not a resident of the State of Illinois and has its principal place of business at 5201 Blue Lagoon Drive, Suite 802, Miami, FL  33126.

5.    The Inventory Financing Agreement was negotiated and substantially performed by CDF and Mude in the State of Illinois.

6.    On or about January 14, 2008, Luiz Scarpelli Filho, one of the members of Mude represented to me that there was less than $1.5 million in Mude's Citibank, N.A., Account No. 320048690 (the "Mude Bank Account").

7.    Pursuant to ILCS 5/4-108, CDF requests issuance of an Order of Attachment based upon a bond in the amount of $3,000,000, which I believe is two times the value of the funds in the Mude Bank Account.  In the event that the funds in the account exceed $1.5 million, CDF will increase the amount of the Attachment Bond to twice the amount of funds in the Bank Account.

8.    Given that the Mude property that CDF seeks to attach is not in the possession of the Defendant Mude, but is held at Citibank, N.A., Account No. 320048690, CDF seeks an order of the Court directing the Sheriff of Will County to garnish Citibank, N.A., at its branch located at 691 Brook Forest Avenue, Shorewood, Illinois  60404.

FURTHER AFFIANT SAYETH NOT.

_____
Christopher J. Wohlert

THE FOREGOING SUBSCRIBED AND SWORN to before me this 14th day of January, 2008 by Christopher J. Wohlert.

_____  Notary Public

**MADA L. AMBERS**
Notary Public
Cobb County
State of Georgia
My Commission Expires Sep 22, 2009

My Commission Expires:

09/22/2009

02/04/08 WCCH

IN THE CIRCUIT COURT OF THE TWELFTH JUDICIAL CIRCUIT OF ILLINOIS
WILL COUNTY

|                                    |     |                        |
| ---------------------------------- | --- | ---------------------- |
| GE COMMERCIAL DISTRIBUTION,        | )   |                        |
| FINANCE CORP.,                     | )   |                        |
|                                    | )   |                        |
| Plaintiff,                         | )   |                        |
|                                    | )   |                        |
| vs.                                | )   | CASE NO. 08 L 045      |
|                                    | )   |                        |
| MUDE USA, LLC,                     | )   |                        |
|                                    | )   |                        |
| Defendant.                         | )   |                        |

## PROOF OF SERVICE

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil

Procedure, I hereby certify that I served **(1) Garnishment Summons (Non-Wage); (2)**

**Garnishment (Non-Wage) Notice; (3) Affidavit for Garnishment (Non-Wage); and (4)**

**Order of Attachment and Garnishment in Aid of Attachment entered January 22, 2008**

upon Defendant by enclosing a copy of same in an envelope addressed as follows:

> Mude USA, LLC
> 5201 Blue Lagoon Drive, Suite 802
> Miami, Florida  33126

and by depositing said envelope with first-class postage fully pre-paid in the United States mails

at Peoria, Illinois, on this _28th_ day of January, 2008.

_____

JEFFREY ALAN RYVA
HUSCH & EPPENBERGER, LLC
401 Main Street, Suite 1400
Peoria, Illinois 61602-1241
Telephone:  (309) 637-4900
Facsimile:  (309) 637-4928

0223481.01                              WCCH        02042008

## IN THE CIRCUIT COURT OF WILL COUNTY, ILLINOIS

GE COMMERCIAL DISTRIBUTION
FINANCE CORP.,                          Plaintiff,

        v.

MUDE USA, LLC,

                     Defendant,

      and

CITIBANK, N.A.,

               Garnishee Defendant.

08L 045

Case No. 08 L _____

**Please serve Garnishee Defendant at:**

CITIBANK, N.A.
691 Brook Forest Avenue
Shorewood, Illinois 60404

### GARNISHMENT SUMMONS (NON-WAGE)

To the garnishee Defendant:

    **YOU ARE SUMMONED** and required to file answers to the Judgment Creditor's Interrogatories, in the office of the clerk of this court, Will County Courthouse, Joliet, Illinois, on or before _Feb, 13_ , 2008. _at 9:00 a_

**However, if this summons is served on you less than 10 days before that date, you must file answers to the interrogatories on or before 14 days after the return date stated above. IF YOU FAIL TO DO SO, A CONDITIONAL JUDGMENT BY DEFAULT MAY BE TAKEN AGAINST YOU FOR THE AMOUNT OF ALL FUNDS IN DEFENDANT'S ACCOUNT NO. 320048690 AT CITIBANK, N.A., WHICH FUNDS WERE ATTACHED PURSUANT TO THAT CERTAIN ORDER OF ATTACHMENT AND GARNISHMENT IN AID OF ATTACHMENT ENTERED IN THE ABOVE-CAPTIONED CASE.**

To the officer:

    This summons must be returned by the officer or other person to whom it was given for service and must include a certification that within 2 business days of service upon the garnishee, the officer or other person has mailed, by first class mail, a copy of the Garnishment Notice and Summons, to the Judgment Debtor, at the address indicated above with endorsement of service and fees. If service cannot be made, this summons shall be returned so endorsed. This summons may not be served later than the above date.

JAN 22 2008
PAMELA J. McGUIRE

Witness, _____, 2008

**PAMELA McGUIRE**, Clerk of the Circuit Court
Will County, Illinois

By:_____

                                   **Deputy**

Plaintiffs' Attorneys:
Jeffrey Alan Ryva
HUSCH & EPPENBERGER, LLC
401 Main Street, Suite 1400
Peoria, Illinois 61602-1241
Telephone: (309) 637-4900

Date of Service _____, 2008
(To be inserted by officer on copy left with
Garnishee Defendant or other person)

0222915.01

## IN THE CIRCUIT COURT OF WILL COUNTY, ILLINOIS

GE COMMERCIAL DISTRIBUTION
FINANCE CORP.,

        Plaintiff,

      v.

MUDE USA, LLC,

        Defendant,

     and

CITIBANK, N.A.,

        Garnishee.

Case No. 08 L _____

O8L 045

### GARNISHMENT (NON-WAGE) NOTICE

**Defendant's Attorney**

Name _____

Address _____

City _____

Telephone _____

**Plaintiff's Attorney**

Name  Jeffrey Alan Ryva, Husch & Eppenberger, LLC

Address  401 Main Street, Suite 1400

City  Peoria, Illinois  61602

Telephone  (309) 637-4900

**Property Attached**  All funds in Defendant's Bank Account No. 320048690

**Garnishee's Address**  Citibank, N.A., 691 Brook Forest Avenue, Shorewood, Illinois  60404

**Notice:** The court has issues a garnishment summons against the garnishee named above for money or property (other than wages) belonging to the Defendant or in which the Defendant has an interest. The garnishment summons was issued on the basis of the Order for Attachment and Garnishment in Aid of Attachment entered by the Court.

The amount of money or property (other than wages) that may be garnished is limited by Federal and Illinois law. The judgment debtor has the right to assert statutory exemptions against certain money or property of the judgment debtor which may not be used to satisfy the judgment in the amount stated above.

### PARTIAL LIST OF EXEMPTIONS

1. Social Security
2. Public Aid Benefits
3. Up to $4,000 in Personal Property Including, money in Bank Accounts
4. Life Insurance Proceeds
5. Debtor Equity in Vehicle ($2,400)
6. Worker's Compensation Awards
7. Disability/Unemployment Compensation Benefits
8. Veterans Benefits
9. Debtor's Equity Interest in Implements, Professional Books or tools of the trade of the Debtor ($1,500)
10. Alimony, Support, Separate Maintenance
11. Crime Victims Awards
12. $15,000 for Personal Injury Award
13. Pension

You have the right to request a hearing before the court to dispute the garnishment because of claimed exemptions. To obtain a hearing you must appear in the office of the Clerk of the Circuit Court, before the summons return date, or on the return date as specified on the summons. The Clerk of the Circuit Court will provide forms which must be prepared, by you or your attorney, a copy of which must be sent to the Plaintiff, and the garnishee and/or their respective attorneys.

2870751.01

01/28/08 WCCH

IN THE CIRCUIT COURT OF WILL COUNTY ILLINOIS

GE COMMERCIAL DISTRIBUTION FINANCE CORP., )
                                          )
                              Plaintiff,  )
                  v.                      )      Case No. 08 L 0425
MUDE USA, LLC,                            )
                                          )
                              Defendant,  )
                  and                     )
CITIBANK, N.A.,                           )
                                          )
                              Garnishee.  )

### AFFIDAVIT FOR GARNISHMENT (NON-WAGE)

JEFFREY ALAN RYVA, on oath states:

1.    On January __, 2008, the Court entered an Order of Attachment and Garnishment in aid of Attachment (the "Order"), pursuant to which the Court ordered, among other things, the Sheriff of Will County, Illinois, to attach all funds in Defendant's Account No. 320048690 at Citibank, N.A.

2.    Based upon the representations of Plaintiff and the Affidavit filed in support of the Order, I believe garnishee has in its possession, custody or control property that belongs to Defendant or in which Defendant has an interest.

    I request that summons be issued and directed to the garnishee.

                                    _____

Signed and sworn to before me this 16th day of January, 2008.

                                    _____
                                    Janice L. Bohm
                                    Notary Public

Plaintiffs' Attorneys:
JEFFREY ALAN RYVA
HUSCH & EPPENBERGER, LLC
401 Main Street, Suite 1400
Peoria, Illinois 61602-1241
Telephone: (309) 637-4900
Facsimile: (309) 637-4928

OFFICIAL SEAL
JANICE L. BOHM
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 04/02/09

2870748.01

IN THE CIRCUIT COURT OF THE TWELFTH JUDICIAL CIRCUIT OF ILLINOIS
WILL COUNTY

SERVED
DATE IS 1/30/08
TIME _____
BY _M. Barreto (?)___
BADGE # 6958
MIAMI-DADE POLICE DEPA-
OFFICE OF THE
METROPOLITAN SHERIFF
COURT SERVICES BURE
MIAMI-DADE CO.

GE COMMERCIAL DISTRIBUTION )
FINANCE CORP., )
        Plaintiff, )    BOND NO. _____
                   )
        vs. )    CASE NO. 08 L ___ 08L 045
                   )
MUDE USA, LLC, )
                   )
        Defendant. )

## <u>ORDER OF ATTACHMENT AND GARNISHMENT IN AID OF ATTACHMENT</u>

Upon the Ex Parte Motion of Plaintiff GE COMMERCIAL DISTRIBUTION FINANCE

CORP. ("CDF") for an Order of Attachment and Garnishment in Aid of Attachment (the "Ex

Parte Motion"), supported by the affidavit of Christopher J. Wohlert (the "Affidavit"), and the

Court having reviewed CDF's Verified Complaint, the Motion, the Affidavit, and the

Attachment Bond, the Court finds that: (i) grounds for attachment exist pursuant to 735 ILCS

5/4-101(1) because: Defendant MUDE USA, LLC is not a resident of the State of Illinois; (ii)

jurisdiction and venue are proper in Will County, Illinois, because: (a) the Security Agreement

described below was negotiated and substantially performed by CDF and Mude in the State of

Illinois; (b) Defendant is not a resident of Illinois; and (c) the property of Mude that CDF seeks

the Court's authority to attach is located with Citibank, N.A., which bank has a branch located in

Will County, Illinois, at 691 Brook Forest Avenue, Shorewood, Illinois 60404; and (iii) the

attachment bond in the amount of $3,000,000 satisfies ILCS 5/4-108 because CDF, believes, on

information, that there is no more than $1,500,000 in the Mude bank account it seeks to attach

and garnish.

2870835.01

IN THE CIRCUIT COURT OF THE TWELFTH JUDICIAL CIRCUIT OF ILLINOIS
WILL COUNTY

GE COMMERCIAL DISTRIBUTION ) 
FINANCE CORP., )
      Plaintiff, )  BOND NO. _____
            )
    vs. )  CASE NO. 08 L ___0 8 L  0 4 5___
            )
MUDE USA, LLC, )
            )
      Defendant. )

## ORDER OF ATTACHMENT AND GARNISHMENT IN AID OF ATTACHMENT

Upon the Ex Parte Motion of Plaintiff GE COMMERCIAL DISTRIBUTION FINANCE

CORP. ("CDF") for an Order of Attachment and Garnishment in Aid of Attachment (the "Ex

Parte Motion"), supported by the affidavit of Christopher J. Wohlert (the "Affidavit"), and the

Court having reviewed CDF's Verified Complaint, the Motion, the Affidavit, and the

Attachment Bond, the Court finds that: (i) grounds for attachment exist pursuant to 735 ILCS

5/4-101(1) because: Defendant MUDE USA, LLC is not a resident of the State of Illinois; (ii)

jurisdiction and venue are proper in Will County, Illinois, because: (a) the Security Agreement

described below was negotiated and substantially performed by CDF and Mude in the State of

Illinois; (b) Defendant is not a resident of Illinois; and (c) the property of Mude that CDF seeks

the Court's authority to attach is located with Citibank, N.A., which bank has a branch located in

Will County, Illinois, at 691 Brook Forest Avenue, Shorewood, Illinois 60404; and (iii) the

attachment bond in the amount of $3,000,000 satisfies ILCS 5/4-108 because CDF, believes, on

information, that there is no more than $1,500,000 in the Mude bank account it seeks to attach

and garnish.

2870835.01

**ACCORDINGLY, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.  The Motion is GRANTED.

2.  A Writ of Attachment shall issue to Defendant MUDE USA, LLC, at 5201 Blue Lagoon Drive, Suite 802, Miami, Florida 33126, with respect to all of the funds in Mude's account with Citibank, N.A., No. 320048690.

3.  A Writ Garnishment in aid of attachment shall issue to garnishee CITIBANK, N.A., 691 Brook Forest Avenue, Shorewood, Illinois 60404.

4.  The Sheriff for Will County, Illinois, or the Sheriff for Dade County, Miami, shall serve the complaint, summons, Motion, Affidavit, this Order of Attachment and Garnishment in Aid of Attachment and a copy of the Attachment Bond on MUDE USA, LLC, at 5201 Blue Lagoon Drive, Suite 802, Miami, Florida 33126.

5.  The Sheriff for Will County, Illinois, or the Sheriff for Dade County, Miami, shall summon Mude to appear and answer CDF's Verified Complaint on or before ___2|5___, 2008 or, Mude may elect to appear at any time prior to the foregoing date and move this Court to set a hearing on this Order or the Affidavit of Christopher J. Wohlert.

6.  The Sheriff for Will County, Illinois, shall attach Citibank, N.A., Account No. 320048690 and shall serve summons to garnishee, interrogatories to garnishee and a copy of the Order of Attachment and Garnishment in Aid of Attachment and the Attachment Bond on CITIBANK, N.A., at 691 Brook Forest Avenue, Shorewood, Illinois 60404.

7.  Pursuant to 735 ILCS 5/4-126, Citibank, N.A., is directed to:  (i) hold all funds in Account No. 320048690, subject to further order of this Court; and (ii) not pay to Mude,

2870835.01

or any other person, any of the funds in Account No. 320048690, pending further order of this Court.

8.  The return date hereon, pursuant to 735 ILCS 5-4/110 is _____2/5_____, 2008 (the "Return Date"). The Sheriff for Will County, Illinois, shall summon Citibank, N.A., to appear in Court on the Return Date at _9_:_00_ a.m. to answer to what property of Mude is held by Citibank, N.A.

**IT IS SO ORDERED.**

Dated: January _22_, 2008

_____ ( copy )
Circuit Court Judge

**CERTIFICATION**

I, PAMELA J. McGUIRE, CLERK OF THE 12TH JUDICIAL CIRCUIT WILL COUNTY, ILLINOIS, CERTIFY THIS TO BE A TRUE COPY OF AN ORIGINAL RECORD OF THIS CIRCUIT COURT.

SIGNED: _____  _____
         CLERK              DATE

IN THE CIRCUIT COURT OF THE TWELFTH JUDICIAL CIRCUIT OF ILLINOIS
WILL COUNTY

GE COMMERCIAL DISTRIBUTION,        )
FINANCE CORP.,                     )
                    Plaintiff,     )
                                   )
            vs.                    )    CASE NO. 08 L 045
                                   )
MUDE USA, LLC,                     )
                                   )
                    Defendant.     )

**STATEMENT OF RESERVATION OF RIGHT TO ARBITRATE DISPUTE**
**AND MOTION FOR STAY OF LITIGATION PENDING ARBITRATION**

TO THE CLERK OF COURT AND ALL PARTIES:

PLEASE TAKE NOTICE that Plaintiff GE COMMERCIAL DISTRIBUTION

FINANCE CORP., a Delaware corporation ("CDF") hereby reserves its right to enforce

the arbitration proceedings contained in the Inventory Financing Agreement identified

and described in CDF's complaint, filed concurrently herewith (the "Complaint"). CDF

filed the Complaint in this action as required by ILCS 5/4-130 for the sole purpose of

submitting its Motion for (I) Order of Attachment and (II) Garnishment in Aid of

Attachment, filed concurrently herewith (the "Motion"). Nothing in the Complaint or in

the filing of this action shall be construed as a waiver of CDF's rights to enforce the

arbitration clauses contained in its agreement with defendant MUDE USA, LLC.

Pursuant to ILCS 5/4-101, CDF is entitled to seek the issuance of an order of

attachment in this Court. Plaintiff does not waive the arbitration clause in the Inventory

Financing Agreement and seeks to have the Court stay all aspects of this case other than

provisional remedies, which remedies include, but are not limited to attachment and

2870842.01

garnishment.  As set forth in the Motion, CDF has met the statutory requirements

necessary to obtain a writ of attachment and garnishment in aid of attachment.

Accordingly, CDF respectfully requests that this Court stay all aspects of this

litigation, other than the relief requested in the Motion.

GE    COMMERCIAL    DISTRIBUTION
FINANCE CORP., Plaintiff

By:_____

HUSCH & EPPENBERGER, LLC,
Its Attorneys

JEFFREY ALAN RYVA
HUSCH & EPPENBERGER, LLC
401 Main Street, Suite 1400
Peoria, Illinois 61602-1241
Telephone:  (309) 637-4900
Facsimile:   (309) 637-4928

2870842.01